(Opinion published 52 N. W. Rep. 27.)

---

*In re* CHARLEMAGNE TOWER'S ESTATE.

Submitted on briefs Jan. 11, 1892. Decided April 25, 1892.

**Suspension of the Power of Alienation.**—In this state the absolute power of alienation, as respects real estate, cannot be lawfully suspended by the creation of a trust for more than two lives in being. But as to personal property the common-law rule still prevails, and a trust therein may continue for one or more lives in being at the death of a testator, and 21 years and a fraction.

**Same—When not Suspended.**—By the statute the absolute power of alienation is not suspended, where there is a person in being by whom an absolute fee in possession can be conveyed.

**Same.**—And where a single trust embraces both personal and real property, and it does not offend against the rule as to perpetuities in respect to the personalty, and by the instrument creating the trust an unconditional power of sale is given to the trustees, under which they may at any time convey the lands, and the converted fund is subject to a valid trust, the power of alienation is not suspended, and the trust is not in contravention of the statute.

Appeal by Charlemagne Tower, Jr., Richard Henry Lee, and Julius A. Bailey, executors and trustees under the will of Charlemagne Tower, Sr., deceased, from the judgment of the District Court of St. Louis County, *Stearns, J.,* entered Sept. 8, 1891.

Charlemagne Tower, Sr., died testate July 24, 1889, at his residence in Philadelphia, Pa., seised of 17,935 acres of land in Wadena, Otter Tail, Becker, Clay, and Norman counties, and of considerable real estate in the city of Duluth. His last will was admitted to probate at Philadelphia; and on December 9, 1889, it was also admitted to probate and record as a foreign will, in the Probate Court of St. Louis County. The appellants were named in it executors of the will and trustees of the trusts thereby created. On November 10, 1890, they presented in the Probate Court of St. Louis County their final account, and asked that it be settled and allowed, and that the said real estate and all the property in this State belonging to deceased at his death, and not otherwise disposed of, be assigned to such persons as by law were entitled thereto, and that they be discharged. Notice was duly given, and on December 3, 1890, the hearing was had.

The Probate Court found that the expenses of the administration in this State had been paid, that no debts or claims had been presented here, and assigned the real estate to the said trustees upon the trusts and with the powers and subject to the conditions created or imposed by the will. The deceased left, him surviving, five children,—one son, Charlemagne Tower, Jr., and four daughters, Deborah T. Lee, Emma Snyder, Grace W. Putnam, and Henrietta Tower. The daughters, on July 23, 1891, presented a petition in the Probate Court of St. Louis County excusing their failure to appear and oppose this decree, and asked that it be vacated, and that the estate situated in Minnesota be assigned to the widow and children of deceased, on the

ground that the will was invalid and contrary to the law against perpetuities. That Court appointed August 17, 1891, for hearing on this petition, and notice was given to the trustees and all interested. On that day the Probate Court granted the prayer of this petition, and vacated the decree of December 3, 1890, and assigned the estate to the five children, share and share alike. The widow, having elected to take under the will the property devised and bequeathed to her situate in Pennsylvania and elsewhere, was precluded from sharing with the children in the property in this state.

The trustees appealed to the District Court of St. Louis County, where the decree was affirmed, and the trustees then appealed to this Court. The provisions of the will are sufficiently stated in the opinion of the court.

*Walter Ayers,* for appellants.

This appeal is an amicable one, and has the same object as a bill for the construction of the will. This will has been passed upon by the Court of Appeals of New York in *Lee* v. *Tower,* 124 N. Y. 370, and by the Supreme Court of North Dakota in *Penfield* v. *Tower,* 1 N. Dak. 216. In those States the legislation upon the subject of perpetuities, so far as it relates to real estate, is similar to that of Minnesota; but there are reasons, it seems to us, why the conclusion arrived at by those courts would not be justified under the statute law in Minnesota. The trusts created by the Tower will are perfectly valid in Minnesota as to personal property, because they fall within the common-law limit of lives in being and twenty-one years, and the period of gestation thereafter. *Cadell* v. *Palmer,* 1 Clark & F. 372; Jarm. Wills, 508–517.

The provisions of the statutes relating to perpetuities in both New York and North Dakota relate as well to personal as to real property. N. Y. Rev. Stat. pt. 2, ch. 4, tit. 4; N. Dak. Comp. Laws, §§ 2734–2754.

The provision of the New York statutes above referred to was not incorporated into the Minnesota statutes, and, as the statutory provisions against perpetuities in Minnesota are found only in a chapter relating to estates in real property exclusively, the common-law rule as to perpetuities still governs as to personal property. *Dodge* v.

*Williams,* 46 Wis. 70; *De Wolf* v. *Lawson,* 61 Wis. 469; *Toms* v. *Williams,* 41 Mich. 552.

The provision of the law against perpetuities, as it stands in Minnesota, is not infringed by the provisions of this will. 1878 G. S. ch. 45, § 14, provides that the absolute power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed. In this case there are persons in being, viz. the trustees, by whom an absolute fee in possession can be conveyed. They are vested with a discretionary power to sell absolutely; and this has been held sufficient to take a case out of the operation of the rule against perpetuities. *Thatcher* v. *St. Andrew's Church,* 37 Mich. 264.

*W. W. Billson,* for respondents.

By the terms of the will the trusts were to continue until the expiration of twenty-one years after the death of the last survivor of the numerous children and grandchildren of the deceased, born in his lifetime. The provisions of the will are confessedly repugnant to the limitations of 1878 G. S. ch. 45, §§ 14, 15, unless their validity is saved by the circumstance that the trustees are, by the terms of the will, clothed with a discretionary power of sale. This question, with respect to the same will, has been twice adjudicated under statutes similar to our own, and in each case the will was held invalid. *Lee* v. *Tower,* 124 N. Y. 370; *Penfield* v. *Tower,* 1 N. D. 216.

The only distinction in our State is the absence from our laws of restrictions upon the accumulation of personal property.

VANDERBURGH, J. This appeal involves the construction of certain clauses of the will of Charlemagne Tower, late of Philadelphia, in the state of Pennsylvania, deceased, and relates especially to the disposition under the will of certain real estate situated in this state. The questions raised and to be considered are in respect to the validity of a certain trust created by the will, and by particularly whether the absolute power of alienation of the real estate in question is suspended for a period exceeding two lives in being. The trust is ad-

mitted to be valid under the laws of the state of Pennsylvania, the domicile of the testator, where the will was made and admitted to probate, and where the common-law rule in respect to perpetuities still prevails. Under this rule the alienation or disposition of estates could be suspended for one or more lives in being, and for twenty-one years and nine months after the death of the testator. That is, the suspension may be for the life of the survivor of several, and a period in addition thereto long enough to cover a minority and gestation in the case of a child unborn at the death of the testator.

And this rule is applicable alike to real and personal property. In New York, the rule is modified by statute as respects both, and it is provided that the absolute ownership of personal property shall not be suspended, by any condition or limitation whatever, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing the limitation or condition, or, if it be a will, at the death of the testator; and the estate *must*, by the terms of its creation, be restricted within the required limit or it is void. 4 Kent, Comm. *283; *Tayloe* v. *Gould*, 10 Barb. 398. Our statutes in relation to uses and trusts and estates in real property are substantially a transcript of the New York statutes on the same subjects. And by 1878 G. S. ch. 45, § 15, "the absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of two lives in being at the creation of the estate." And § 14 declares that "such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed." By a singular omission the legislature of the state has failed to make any similar provision in respect to personal property, though limitations upon the absolute disposition of personal property have always been regarded with even more jealousy by the courts than those pertaining to real estate. The attention of the legislature seems to have been specially directed to a limitation of the power of the suspension of the alienation of real estate.

The statutory rule in respect to the suspension of the power of alienation is the test applied in determining the question whether

an unlawful perpetuity is attempted to be created by a deed or will, and is strictly construed. But, apart from this, where the objects of a trust, or some of them, are within the general purposes of the provisions of the statute in respect to express trusts, the courts are disposed to give a liberal construction to those provisions. It is not necessary that a trust be declared in the words of the statute; it is sufficient that the language used discloses the purpose to create a trust of a character authorized by it. Thus, under 1878 G. S. ch. 43, § 11, which permits a trust to receive rents and profits, and apply them to the use of any person during the life of such person, it is no objection that the income of real and personal property is mingled together and applied, and a direction to trustees in a will "to pay over" is substantially a direction "to apply to the use." *Heermans* v. *Robertson*, 64 N. Y. 348, and cases.

The singular includes the plural in statutory construction, and a trust to receive the income of property, and apply it to the support of members of a family, and subject to open and let in others of a class to be supported from time to time, is held to be valid, provided only that the power of alienation be not suspended beyond the statutory limit; and to this end the trust may be for the lives of third persons as well as of beneficiaries of the trust, and the testator may designate the lives. *Haxtun* v. *Corse*, 2 Barb. Ch. 506; *Crooke* v. *County of Kings*, 97 N. Y. 437.

And such trust is sustainable though the trust purposes do not consume all the rents and profits, and though the testator direct an application of the surplus to other uses. *Manice* v. *Manice*, 43 N. Y. 334, and cases.

And in this state the statutory provisions in respect to trusts in real estate must, in proper cases, be construed in connection with the common-law rule in force here, and above referred to, in respect to trusts in personal property and proceeds of real property converted into personalty.

It is also a well-settled rule of construction, says Chancellor Walworth, that the intention of the testator, when it shall have been ascertained from an examination of the will in connection with the situation of his property at the time of the making of the will, must

be carried into effect by the courts, so far as that intention is consistent with the rules of law. *Irving* v. *De Kay*, 9 Paige, 528.

But, as we understand it, the objection by the respondents to the trust, as respects the lands in this state, is that the power of alienation is unlawfully suspended thereby, and not that the trust might not otherwise be sustained, and the question of illegal suspension turns wholly upon the effect to be given to the power of sale given to the trustees by the will. This, then, is the first and chief question to be considered upon the arguments of counsel, as presented in this court.

By his will, the testator in the case before us, after making a bequest of his household effects, library, etc., to his wife, and giving her a life estate in the homestead, gave and devised all the rest, residue, and remainder of his estate, real, personal, and mixed, to his executors named, who were also made trustees under the will, in trust "to take, hold, possess, manage, and appropriate the same, and to collect, receive, obtain, and recover all the rents, issues, profits, income, dividends, and gains thereof, and all the proceeds and avails thereof, and to invest and keep invested the same, and every part of the capital thereof, so as to make the same as productive as reasonably can be, and to keep proper accounts, as hereinafter more particularly directed, in respect to the said trust property, and the proceeds, avails, and income thereof; hereby directing them to preserve such investments and securities as I shall leave standing in my name, as long as they, my said trustees or their successors in the trust, shall deem prudent, and making such new investments as they, in their best judgment and discretion, shall deem advisable and advantageous to my estate, without confining themselves to such investments as the law directs for the investment of trust funds; hereby allowing them full power to select any investments or securities they may approve, except the capital stocks of corporations and obligations not accompanied with reasonable securities; with full power, also, to the said trustees to change any such investments, whether left by me or made by them, and to convert and reinvest the proceeds whenever and as often as they, in their judgment and discretion, may think most to the advantage of my estate."

The purposes of the trust, as declared in the will, were defined as follows: Next after the 1st day of June or December nearest the date of his decease, and preceding which temporary provision was made for his wife and children, it directed (1) the whole net income of his estate be paid over to his wife and children, four tenths to his wife, and six tenths in equal shares to his children, for and during the term of her natural life; and (2) after her death he directed that the whole net income should be paid over to his children in equal shares, or the children of any deceased child, until the time fixed in the will for the final distribution of the capital fund of his estate, which was therein fixed "at the expiration of twenty-one years from and after the death of the last survivor of my children and grandchildren who shall be born in my lifetime."

In addition to the provisions and directions in respect to the control and management of the estate by the trustees, the will further expressly authorizes and empowers his executors and trustees, and their successors in the trust, to sell and dispose of any and all of his real estate within any state or territory of the United States of America, and to make good and sufficient title therefor in fee simple unto the purchaser or purchasers thereof, without any duty or obligation on the part of said purchaser or purchasers to see to the application of the purchase money which shall be paid to his said executors, and by them invested and applied according to the uses and trusts of the will.

It is evident that the testator intended to clothe his executors with the largest discretionary powers consistent with prudent management. The power to sell is absolute and unconditional. Any good-faith purchaser could deal with them as if they were the owners, and acquire a good title. The appellants' contention is that the absolute power of alienation is not suspended, but is expressly incorporated in the trust, and that there is and can be no suspension of such power under the will.

The will creates a trust which is valid as to personal property, and the proceeds of real property converted by the trustees, and to the extent that the trusts are valid the legal estate passes to the trustees commensurate with the nature and purposes of the trust.

The power to sell and convert the real estate was a necessary supplement to the provisions of the will for the management of the estate. If the power of alienation by the trustees is to be treated as equivalent to that of the absolute owner of real estate, then there is no suspension of the power of alienation. Of course, if the trust term was invalid as to the proceeds of the converted real property, the power of sale would avail nothing, since it would be immaterial in what form the trust property might be, and the conversion of the real property would not save the trust, because the proceeds would be subject to the same rule as to perpetuities as governs the realty. But it is contended that inasmuch as the trust term is' lawfully constituted, and the trustees have the legal title and possession and are lawfully empowered to sell and convey the real estate, the trust is valid as to the real as well as the personal property, and the trust is not, therefore, condemned by the statutes of this state.

It is well settled that, where a sale is directed in the instrument creating the trust, such sale is not in contravention of the trust, and that it is competent for a testator to provide for the termination of a trust in real estate by a power of sale incorporated in his will, and vested in the trustees or a third person. *Heermans* v. *Robertson,* 64 N. Y. 350, 353; *Belmont* v. *O'Brien,* 12 N. Y. 405.

In *Cruikshank* v. *Home for the Friendless,* 113 N. Y. 337, (21 N. E. Rep. 64,) a power of sale, it is said, "does not avoid the statute, when the resultant proceeds wear the same fetters as restrain the alienation of the land." The point actually determined in *Brewer* v. *Brewer,* 11 Hun, 152, cited by respondents, was that the trust was invalid, notwithstanding the power, because the proceeds were subject to the execution of a trust in contravention of the statute of perpetuities as respects personal property, though the opinion goes further. In *Haynes* v. *Sherman,* 117 N. Y. 438, (22 N. E. Rep. 938,) a testator by his will created a trust estate, making his wife trustee, to use the income for the support of herself and minor son till the time he would arrive at the age of 21 years, if living, and gave her a discretionary power of sale. She had the power to turn the real into personal property, and both were embraced in a single trust, which was limited by statute to two lives in being. And the court say: "As there was here

an absolute power of sale conferred upon the widow, it cannot be said that the power of alienation of the real estate was suspended, but the proceeds of the sales of the real estate, whether regarded as realty or personalty, would be tied up by the trust in violation of the statute." The same doctrine is announced in *Robert* v. *Corning*, 89 N. Y. 225–235. The language of the court is: "The mere creation of a trust does not *ipso facto* suspend the power of alienation; it is only suspended by such a trust where a trust-term is created, either expressly or by implication, during the existence of which a sale by the trustee would be in contravention of the trust. Where the trustee is empowered to sell the land without restriction as to time, the power of alienation is not suspended, although the alienation in fact may be postponed by the nonaction of the trustee, or in consequence of a discretion reposed in him by the creator of the trust. The statute of perpetuities is pointed only to the suspension of the power of alienation, and not at all to the time of its actual exercise. The fact that the interest of the beneficiaries is alienable by statute (1878 G. S. ch. 43, § 19) during the existence of the trust does not suspend the power of alienation, for the reason that the *trustees* are persons in being who can at any time convey an absolute fee in possession. The only question which in such case can arise under the statute against perpetuities is whether the trusts in respect to the converted fund are legal or operate to suspend the absolute ownership of the fund beyond the period allowed by law." The same effect was given to a discretionary power of sale vested in the trustees in *Thatcher* v. *St. Andrew's Church*, 37 Mich. 264, 271, and it was held that, in consequence thereof, the absolute power of alienation was not suspended.

Under the construction given to the sections of the statute above referred to, it would seem to follow that, if the proceeds of lands converted into money by the trustees under a power of sale are thereafter to be held upon a trust valid as to such converted fund, the trust could be sustained as not in contravention of the statute forbidding the suspension of the power of alienation for more than two lives. The trust established by the will in this case was one embracing both real and personal property. It was not, therefore, in-

valid, and involved no suspension of the power of alienation as respects the land. The testator might have created a trust under which the title would pass to the trustees, and also have made a third person the donee of a power of sale, with directions to make the proceeds part of the trust fund. No one would in that case contend that the power of alienation was suspended in contravention of the statute. But the case presented is in reality no different. Hence we conclude that the trust was not invalid, because it was lawfully constituted as to the personalty, and as to the lands also not in contravention of the statute, for the reason that they are convertible at any time by an authorized sale. The trustees are therefore entitled to the lands for the purposes of the trust, and the probate court erred in directing that they be assigned to the heirs at law.

Judgment reversed, and case remanded for further proceedings in conformity with this opinion.

(Opinion published 52 N. W. Rep. 27.)

