# YOUNG MEN'S CHRISTIAN ASSOCIATION OF MINNEAPOLIS v. JOHN LOUIS HORN.[1]

January 31, 1913.

Nos. 18,001—(271).

**Perpetual trust in personal estate.**

Under R. L. 1905, § 3249, subd. 5, a perpetual trust in personalty may be created for the purposes therein designated, subject to the control of the district court as thereby specified.

**Beneficiary not indefinite.**

A gift of a bond to an individual trustee, in trust to pay the income thereof, or, in case of its payment or sale, to pay the income of the investment of the proceeds, "to and for the benefit of the Young Men's Christian Association of the City of Minneapolis, a corporation of the state of Minnesota, the same to be received and used by said corporation in perpetuity in carrying out its purposes of providing boys and young men, members of the association, with education along industrial lines," *held* not invalid for indefiniteness in the designation of the beneficiary; the corporation being the beneficiary, notwithstanding that it was to receive the profits of the trust upon a condition as to its use.

**Conveyance upon trust valid.**

A conveyance of land in trust "to convert the same into personalty at the earliest practical moment when such conversion can be made without a sacrifice of the value" thereof, the rents, and, after such sale, the income from the proceeds, to be held in trust for a lawful purpose in perpetuity, *held* valid.

Action in the district court for Hennepin county to recover $25,

[1] Reported in 139 N. W. 806.

Note.—The authorities on the question whether a gift for the benefit of members of a particular organization is a charity, are collated in a note in 5 L.R.A.(N.S.) 687.

The question of the enforcement of a general bequest for charity or religion is discussed in elaborate notes in 14 L.R.A.(N.S.) 49 and 37 L.R.A.(N.S.) 993. And the effect of the rule against perpetuities on the enforcement of such a bequest is considered on page 66 of the note in 14 L.R.A.(N.S.)

interest collected upon a certain bond, and $40, rents collected from real estate referred to in the trust agreement mentioned in the opinion. The complaint made the trust agreement a part thereof. The answer admitted the receipt of the money, and for a defense alleged that the funds were held apart by defendant, that he was anxious to turn them over to the party entitled thereto but was advised by counsel that the plaintiff was not that party, for the reason that the trust attempted to be created by the agreement was null and void, for the following reasons: (1) The attempted trust did not fall within any of the classes of trusts authorized by R. L. 1905, c. 60; (2) the attempted trust created a perpetuity in real property in violation of section 3249, subd. 6; (3) the provision permitting conversion of real property into personalty did not relieve the agreement from invalidity under that subdivision 6; (4) the attempted trust created a perpetuity in personal property in violation of chapter 60; (5) the trustee named in the agreement was not appointed by the district court in accordance with the provisions of subdivision 5 of section 3249; (6) the beneficiaries intended to take under the trust were uncertain. The plaintiff demurred to the answer upon the ground that it did not state facts sufficient to constitute a defense. From an order, Booth, J., overruling the demurrer to the answer, plaintiff appealed. Reversed.

*J. M. Martin* and *C. E. Drake,* for appellant.

*John Louis Horn* and *John R. Van Derlip,* for respondent.

PHILIP E. BROWN, J.

Appeal by the plaintiff from an order overruling its general demurrer to the answer.

The complaint, after alleging the incorporation of the plaintiff under the laws of this state, for the purpose, among others, of providing boys and young men with industrial education, charges in substance that in April, 1912, one Moore assigned and delivered to the defendant a $1,000 interest-bearing bond, and conveyed to him certain real property in Minneapolis, and that the parties contemporaneously executed an instrument in writing, which, after reciting the matters above stated, provided that the real and per-

sonal property so conveyed and assigned had been transferred to and accepted by the defendant in trust for the following purposes:

"First. To receive and take charge of said bond, and, in case of payment thereof or of any sale thereof, to invest and loan the proceeds of the same for the benefit of the beneficiary herein named, and to collect and receive the interest and income from said bond and from said proceeds, and to pay the net interest and income, from time to time as received, in perpetuity, to and for the benefit of the Young Men's Christian Association of the city of Minneapolis, a corporation of the state of Minnesota, the same to be received and used by said corporation in perpetuity in carrying out its purposes of providing boys and young men, members of the association, with education along industrial lines.

"Second. To receive, enter into and take possession of said real estate, and to convert the same into personalty at the earliest practical moment when such conversion can be made without a sacrifice of the value of said real estate, and to collect and receive the rents, income and profits therefrom, and from the proceeds of any sale thereof, to pay, in perpetuity, all of the net rents, income and profits, as received from time to time, to and for the benefit of the Young Men's Christian Association of the city of Minneapolis, for the maintenance, support and benefit of said association, with full power and authority in said party of the second part to sell and convey said real estate at any time, and to invest and loan the proceeds thereof, and to change any investment thereof from time to time, as he may deem to be for the best interests of said trust; all such proceeds, and invested and reinvested proceeds, to be held and deemed at all times to be the principal of said second trust fund, and the net interest and income from the same to be paid to said association as aforesaid, in perpetuity, for the uses and purposes herein expressed."

The complaint further alleged that the defendant subsequently collected $25 interest on the bond, and $40 in rents from the realty, but refuses to pay the same to the plaintiff.

The defendant answered, admitting all the allegations of the complaint, but denying all liability, and alleged that the trust attempted to be created by the instruments was void on various grounds stated.

The court overruled a general demurrer to the answer, and this is an appeal from such order.

The parties agree that the proper construction of the second provision of the trust agreement contemplated that the trust thereby attempted to be created is for the sole purpose of benefiting and providing an income for the maintenance and support of the plaintiff.

1. Of the several grounds of invalidity urged against the trust here involved, we will first consider whether it is invalidated by its perpetuity features, assuming for the time being that the trust property consists entirely of personalty; and as the law is, and has been "from the beginning of the state, that express trusts, except as authorized or modified by statute," are prohibited (Watkins v. Bigelow, 93 Minn. 210, 223, 100 N. W. 1104, 1109), we must, in determining the above question, look exclusively to our statutes. Furthermore, since the decision in Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948, there is no doubt but that this rule applies to all trusts, whether public, charitable, or otherwise, and whether in personalty or realty.

The present statute on the subject of trusts is comprehensive and reasonably clear; but, as in most cases where the existing statute is the outgrowth or culmination of legislative enactments during many years, we have found the history of the statute in question very helpful. Indeed, in the present instance, a review of the former statutes seems indispensable to a clear comprehension of the question before us. These statutes are as follows:

G. S. 1866, c. 43, § 11, contained four subdivisions, corresponding to subdivisions 1 to 4, inclusive, of the present statute (R. L. 1905, § 3249); but we need not set them out at this place.

Laws 1875, p. 84, c. 53, added what is now subdivision 5 of the present statute.

G. S. 1878, c. 43, § 11, was the same as subdivisions 1 to 5, inclusive, of the present statute.

Laws 1893, p. 202, c. 83, amended G. S. 1878, c. 43, § 11, as follows: "That section eleven of chapter forty-three of the General Statutes of one thousand eight hundred and seventy-eight, relating to uses and trusts, be and the same is hereby amended by adding at the end thereof the following words: Provided, however, that nothing in this chapter or in any law of this state contained shall be construed as preventing the creation of any trust in writing to endure for a period not longer than the life or lives of specified persons in being at the time of its creation, and for twenty-one years after the death of the survivor of such persons; such writing to fully set forth the nature and terms of the trust; but all such trusts are hereby authorized and allowed; Provided further, that any and all trusts which do not permit the free alienation of the legal estate by the trustee, so that, when so alienated, it shall be discharged from all trusts, shall be deemed and construed as heretofore and shall not be authorized by the provisions of this act."

And chapter 84 of the same Laws [p. 202] added a sixth subdivision, as follows:

"Any incorporated city or village in the state of Minnesota now or hereafter organized is authorized to receive by gift, grant, devise or bequest and take charge of any money, stocks, bonds, personal, real or mixed estates, choses in action and property of any kind whatever, and to invest, reinvest and loan the same for the benefit of any public library association in such city or village and any public cemetery association located within ten miles of the corporate limits of any such city or village free from taxation, and administer the same in accordance with the will of the testator or the grant of the grantor of the estate. The district court of the state of Minnesota shall have the power in respect to such trust estate and trustees as are conferred on the said court by this chapter in respect to other trusts."

The statute, as thus amended, was carried into G. S. 1894 as section 4284; the only change being that the proviso added by Laws

1893, p. 202, c. 83, was made to follow the sixth subdivision added by the same laws.

Laws 1897, p. 87, c. 80, added a section, "to be numbered seventh," as follows:

"For the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, provided such trust shall not endure for a period longer than the life or lives of specified persons in being at the time of its creation, and for twenty-one years after the death of the survivor of such persons; provided, further, that any and all trusts, which do not permit the free alienation of the legal estate by the trustee so that when so alienated it shall be discharged from all trusts, shall be deemed and construed as heretofore, and shall not be authorized by the provisions of this subdivision.

This statute expressly repealed so much of Laws 1893, and all other prior laws inconsistent therewith, thus substantially repealing the proviso added by Laws 1893; for it, as will at once be noticed, covers exactly the same subject as the proviso, the only difference being that the proviso was couched in the negative, and operated by way of a rule of construction, and applied to the whole of the statute to which it attached, whereas the new subdivision was in the form of an affirmative authorization, and its limiting provisos applied only to the subdivision of which they were a part. ·

Laws 1901, p. 101, c. 95, amended G. S. 1894, § 4284, subd. 6, which is subdivision 7 of the present statute (R. L. 1905, § 3249), by adding kindergartens to the list of beneficiaries of the trusts thereby authorized.

Laws 1903, p. 188, c. 132, amended subdivision 6 of section 4284, G. S. 1894, in such manner that it was declared in Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104, to authorize practically every possible kind of trust almost without limit; but this amendment was declared unconstitutional for insufficiency of title.

Thus the law stood when the revision of 1905 was undertaken. In their report to the legislature, however, the Revision Commission

dropped subdivision 5 of section 4284, G. S. 1894, stating that it was so done "in the belief that it is fully covered by the new subdivision," manifestly referring to Laws 1897, p. 87, c. 80, now subdivision 6 of the present statute. In their report, submitting such new subdivision, they likewise omitted the last proviso thereof; and they omitted Laws 1903, p. 188, c. 132, because, as noted above, it had been held void. See Report of Revision Commission 1905, p. 658, and Notes of the Revisors, p. 27. The legislature, in adopting the revision reinstated subdivision 5 and the proviso to the new subdivision, which, as stated, had been omitted, and then enacted the present statute, R. L. 1905, § 3249, practically as reported; the subdivision formerly denominated 6, however, becoming subdivision 7, the statute in its present form being as follows:

"3249. Purposes of Express Trusts — Duration.—Express trusts may be created for any of the following purposes:

"1. To sell lands for the benefit of creditors.

"2. To sell, mortgage, or lease lands for the benefit of legatees or for the purpose of satisfying any charge thereon.

"3. To receive the rents and profits of lands, and apply them to the use of any person, during the life of such person, or for any shorter term, subject to the rules prescribed in chapter 59.

"4. To receive the rents and profits of lands and to accumulate the same, for either of the purposes, and within the limits, prescribed in chapter 59.

"5. To receive and take charge of any money, stocks, bonds, or valuable chattels of any kind and to invest and loan the same for the benefit of the beneficiaries of such express trust; and the district courts of the state shall, upon petition and hearing, have power to appoint a trustee for the purpose herein set forth, requiring such trustee to give such bond for the faithful execution of such express trust as to the court may seem right and proper; and express trusts created under the provisions of this paragraph shall be administered under the direction of the court.

"6. For the beneficial interests of any person or persons, whether such trust embraces real or personal property or both, when the

trust is fully expressed and clearly defined on the face of the instrument creating it: Provided, that the trust shall not continue for a period longer than the life or lives of specified persons in being at the time of its creation, and for twenty-one years after the death of the survivor of them, and that the free alienation of the legal estate by the trustee is not suspended for a period exceeding the limit prescribed in chapter 59.

"7. Any city or village may receive, by grant, gift, devise, or bequest, and take charge of, invest, and administer, free from taxation, in accordance with the terms of the trust, real or personal property, or both, for the benefit of any public library or of any public cemetery located in, or within ten miles of, such city or village, or for the purpose of establishing or maintaining a kindergarten or other school or institution of learning therein."

It is apparent, from the mere reading of the statute and the provisions of the trust here involved, that the perpetuity attempted to be created can be sustained, if at all, only under subdivision 5, which has heretofore not been construed. The general question then, is: Does this subdivision authorize a perpetual trust in personalty for the purposes specified therein? No cumulations being authorized by the alleged trusts in the instant case, the particular question before us is whether a person or a corporation may, under subdivision 5, be given a perpetual endowment of the profits of a trust in personalty.

Standing alone, this subdivision would certainly seem to authorize the trusts therein defined, without limit upon duration. Before its enactment by Laws 1875, p. 84, c. 53, a trust in personalty could not be created in this state; all trusts except those authorized by statute having been abolished by G. S. 1866, c. 43, § 1, and there being then no provisions in our laws authorizing trusts in personalty. Upon the enactment of subdivision 5, therefore, the question which now arises might then have arisen, namely, what was the effect of this addition to the statute? Did it merely restore the common law as to trusts in personalty, with, among other things, its limitations

against perpetuities and likewise its exceptions to and qualifications upon such limitations?

We cannot think that such was the intention of the legislature, for this would be to restore pro tanto the evils against which the trust statute was directed, and likewise the uncertainty and confusion which had long since become symbolized by the term "common-law rule against perpetuities." But, be that as it may, there was nothing in subdivision 5, when adopted, nor in the other subdivisions of the statute, to indicate any intent or purpose other than to authorize certain kinds of trusts in personalty without limit as to duration. The other subdivisions of the statute were ex vi termini separate and independent, and subdivision 5 was enacted as a fifth and separate subdivision. Hence the fact that the trusts authorized by subdivisions 1 to 4, inclusive, were limited as to duration or qualified by certain specific restrictions, either by reason of their purpose or by the terms of the authorization, not only does not give rise to any inference of intention to place similar restrictions upon the trusts authorized by subdivision 5, but affords a presumption directly to the contrary. It would seem, then, that up to 1893, no change in the law having been made in the meantime, a perpetuity might be created in personalty for the purpose of investment for the benefit of the beneficiaries, and this without any inhibition against suspension of the right of alienation of the legal estate so as to free it from the trust; the absence of such an inhibition possibly being due to the fact that investment necessarily imports alienation of the specific property conveyed or given in trust. It may also be well in this connection to note that the terms of the authorization of subdivision 5 contemplate that the administration of the trust be carefully guarded by the provision with reference to the jurisdiction of the district courts.

In 1893, however, by chapter 83 of the Laws of that year, which we have quoted above, a proviso was added to G. S. 1878, c. 43, § 11, "at the end thereof," and of such terms that it would seem to have been intended to apply to all that went before it; that is, to subdivisions 1 to 5, inclusive. This proviso, it will be noted above, is twofold, a proviso within a proviso, the first of which being an enlarge-

ment of the classes of trusts authorized, by way of a negation upon the construction of the preceding subdivisions, and the second being a similar negation upon the construction of the first proviso, and to the effect that the enlargement of the classes of trusts effected by the whole proviso should not be construed to authorize any further restrictions upon alienation than was already allowed; that is, that any such further restrictions were not authorized by "this act," thereby meaning the act by which the proviso was added, and not the chapter and section which were being amended.

This construction of the proviso is strongly supported by the decision of this court in City of Owatonna v. Rosebrock, 88 Minn. 318, 324, 92 N. W. 1122, to the effect that the scope of subdivision 6 of section 4284, G. S. 1894, which is the same as subdivision 7 of the present statute, was not restricted by such proviso. The case cited, furthermore, is, we think, directly in point to the proposition that under subdivision 5 as it then stood a perpetuity might be created. The fund in that case was given to a city in trust for the purpose of maintaining a kindergarten, and such gift was without limitation upon the duration of its trust character, thus being in fact a perpetuity, though not so denominated. Yet the gift was upheld, the court, [at page 324,] saying: "The proviso attached to section 4284 in reference to perpetuities has no application to bequests of this character to a municipality, they being expressly authorized"—and not, the court might have added, being dependent upon the sweeping authorization of the first proviso.

This language disposes of the respondent's contention that the trust here involved is unauthorized for the reason that subdivision 5 does not expressly authorize a perpetuity in terms. An inhibition against a perpetuity, and in fact any provision as to duration, is a pure limitation, and any limitation upon power or authority must either arise from the limited terms of the grant, or else be superimposed upon a prior unlimited grant. If no limit is imposed, therefore, and if the terms of the grant do not of themselves import a limit, then the grant is without limit. Here the trusts authorized by subdivision 5 are limited as to purpose and property, but

unlimited as to duration; for the general right to exist is granted, and no subsequent limitation upon such existence is imposed.

The respondent, however, insists that there is no warrant for the claim that the trust here involved is authorized by subdivision 5, for the reason that the subject is fully covered by subdivision 6. In reply to this it might simply be said that so also thought the Revision Commission (see their report, cited supra), but that the legislature deemed otherwise, as indicated by the fact that they reinstated subdivision 5, after it had been omitted by the Commission in the belief that its subject-matter was covered by subdivision 6. Even if this were all we had to guide us, we think it would be sufficient as against the objection here urged. However, we will consider briefly subdivision 6.

This subdivision was, as we have indicated in our review of the statutes, added by Laws 1897, p. 87, c. 80, or rather the proviso to section 4284, G. S. 1894, was thereby changed into a subdivision. That such was the only effect of the act of 1897 is, we think, clearly apparent from the analysis of this act and the proviso, and the comparison of the two which we have already made. Subdivision 6 must therefore be held to be merely a general authorization, subject to specified limitations upon duration and in the matter of restrictions upon alienation, intended to cover numerous occasions that may require a trust, but which are not within any of the other subdivisions. Such clearly was its sole purpose when it was a proviso, and we cannot see that this purpose has been either enlarged or restricted by the change from proviso to subdivision. This, we venture to say, was the theory upon which the legislature reinstated subdivision 5. On the revision, moreover, no change was made in subdivision 6, except by the insertion of the words "whether such trust embraces real or personal property or both," and by a change, not here material, in the inhibition against restrictions upon alienation.

We hold that, so far as its perpetuity feature is concerned, the trust here involved, assuming for the moment that its corpus consists entirely of personalty, is authorized by subdivision 5.

It is true, as contended by the respondent, that the spirit of our laws is against perpetuities; but we think, nevertheless, that the legis-

lature did not intend to place any limitation upon trusts of this kind, any more than upon those authorized by subdivision 7, as to which we have seen that no time limit is deemed to have been imposed. We have nothing to do with the wisdom of this lack of limit upon duration, and if it should lead to abuse the remedy would be with the legislature. By its terms, however, subdivision 5, though seemingly very broad at the first glance, should never be invoked as authorizing accumulations; nor does it authorize any restriction upon the alienation of the legal estate, for the very purpose of the trust thereunder requires investment, which is the same purpose for which the greater portion of all personal property is used, with the usual incidents of loss or dissipation, as well as gain. Since, therefore, the trust is only in the profits, the only evils which could arise therefrom would seem to be those which may arise from a perpetual direct endowment of a person or corporation in a very large sum. That such endowment might lead to evil results is readily imaginable, but that no such evils are now apparent would seem to follow from the fact that the legislature has let the subdivision stand so long without change, and, further, from the fact that direct endowments are of frequent occurrence, and often of manifest benefit to the community, to the state, and to humanity.

2. It is contended by the respondent that the first portion of the trust, which we will hereinafter designate as the first trust, is void for uncertainty of the beneficiaries. The language of the instrument in this regard is as follows: "To and for the benefit of the Young Men's Christian Association of the city of Minneapolis, a corporation of the state of Minnesota, the same to be received and used by said corporation in perpetuity in carrying out its purposes of providing boys and young men, members of the association, with education along industrial lines."

It must be conceded, as contended by the respondent, that it is the settled law of this state that a gift to a private individual, in trust for either personal or charitable purposes, must designate the beneficiaries at least in such a way that they are capable of being rendered certain, but that a gift to a corporation, with directions as to

use, may be valid, not as a trust, but as a gift upon condition, though the ultimate beneficiaries of the gift are more or less uncertain. Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948.

"The difference, however, between an individual and corporation, in the supposed case, is manifest," said Chief Justice Start, at page 209: [1] "The corporation would be expressly organized and authorized by law to do the work for which the bequests were made, and, should it abuse its franchise, it could be dissolved. Not so in the case of an individual. The distinction is clearly illustrated by the case of Lane v. Eaton, 69 Minn. 141, 71 N. W. 1031: [2] The court held in that case that a devise to two individuals (naming them) or the survivor of them, in trust for the use of the Salvation Army (unincorporated) at St. Paul, was a gift in trust, and void, because the beneficiaries were uncertain; but it was held that a devise to an incorporated church, which was authorized to acquire property by gift for mission purposes, to aid the cause of home and foreign missions equally, was a direct gift to the church, and not in trust, and for that reason alone valid."

Again, in Bemis v. Northwestern Trust Co. 117 Minn. 409, 412, 135 N. W. 1124, it was held that a bequest in trust to establish a "Home for the Aged," but which left it entirely to the discretion of the individual trustees as to when the corporation which was to administer the trust was to be organized was invalid, and Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104, was distinguished on the ground that in that case the organization of the corporation was definitely provided for, and in the case thus distinguished the court said, at page 226: [3]

"If such gift to the corporation be absolute, then the Shanahan case, 88 Minn. 202, 92 N. W. 948, is not here in point, for the gift in that case was to individuals in trust for an uncertain class of beneficiaries. In the opinion in that case the distinction is pointed

[1] [92 N. W. page 949.]                    [3] [100 N. W. at page 1110.]
[2] [38 L.R.A. 609, 65 Am. St. 559.]

out between such a gift to individuals and one to a corporation authorized, as a part of its corporate work or business, to acquire and hold property for the purposes for which the gift was made. A gift by deed, devise, or bequest to an existing corporation, or to one to be thereafter organized within the time limited by law, with directions or conditions as to the use or management of the subject-matter of the gift which are reasonably consistent with the corporate purposes of the donee, is not a gift in trust, but an absolute one to the corporation, within the meaning of our statute of uses and trusts [citing many cases, including Cone v. Wold, 85 Minn. 302, 88 N. W. 977]. The cases cited fully sustain this proposition. In Cone v. Wold it was directly held that: "It is legal for a donor to prescribe, by way of limitation, that his gift shall be kept and preserved, so as to subserve a purpose which a donee corporation was created to promote. To so prescribe is nothing more than to declare that the trust fund shall be devoted to the objects which the legislature had in view when providing for the existence of the corporation.'"

It might be contended that this doctrine should, in reason, be confined strictly to cases where the corporation is organized for the sole purpose of carrying out the particular trust, or, at least, the purposes which the trust is designed to promote; but, as indicated by the excerpts above quoted, the rule has not been thus limited by our decisions. In Lane v. Eaton, supra, at page 146, the court said:

"A part of the general purposes for which this church is organized is missionary work, and funds given to it to be used in that work are not given in trust in the technical sense of that word. Thus, in Atwater v. Russell, 49 Minn. 57, 82, 51 N. W. 629, 52 N. W. 26, lands were conveyed with direction that the proceeds be used by a certain incorporated hospital 'for the support of charity patients in the same.' This kind of charity work was a part of the purposes for which the hospital was incorporated, and the gift was held to be absolute, and not in trust. See, also, Bird v. Merklee, 144 N. Y.

120 M.—27.

544, 39 N. E. 645;[1] Domestic & Foreign Missionary Soc. v. Gaither, 62 Fed. 422."

Under the doctrine of these cases, we think that the gift of the income of the bond, covered by the first trust herein involved, must be sustained, notwithstanding that the donor intended that the young men and boys mentioned should receive the ultimate benefit of the gift. The language of the donation plainly indicates a gift of the proceeds of the bond to the corporation, with directions as to its use, or possibly upon condition. To hold that the young men and boys referred to are the beneficiaries in the sense contemplated by our trust statutes and the cases construing the same would be a very strained construction. If the donor had seen fit to make periodical gifts of the proceeds of this bond directly to the corporation, each gift would, under our decisions, unquestionably have been valid. Then why should the gift be invalidated because made through a third party? "Qui facit per alium facit per se." Is the beneficiary any the less uncertain where the gift is through a third person? Here we have a gift, or rather a series of gifts, made through a trustee, to a certain corporation, for use in carrying out one of the purposes for which it was incorporated, and we cannot distinguish the case from either Lane v. Eaton, supra, or Atwater v. Russell, supra. In the latter case, indeed, the gift was to trustees for the purpose of sale and payment of the proceeds to a certain corporation, which was to receive the same for a certain use, and the gift was upheld.

We must not confuse the question of the validity of the trust as creating a perpetuity with that concerning the certainty of the beneficiaries. These questions are entirely separate and distinct; and, having held that the trust is valid so far as concerns perpetuities, we fail to see how any other conclusion with regard to the other question can be reached than as above indicated. In short, since a gift in the terms of this trust would have been valid if it had been made directly to the corporation, and since there is nothing illegal in the power which he has conferred upon the trustee to make the gifts, the trust must be sustained.

3. As to the donation of the land, which we will designate as the

---

[1] [27 L.R.A. 423.]

second trust, there is no question as to the sufficiency of the designation of the beneficiaries, the sole question, other than that disposed of in subdivision 1 of this opinion, being whether this second trust is invalid, as a trust in land which is not authorized by the statute.

The provisions of the instrument in this regard may be summed up as a gift of land to a trustee, to be by him sold and converted into personalty "at the earliest practical moment, when such conversion can be made without a sacrifice of the value of said real estate," and the proceeds thereof are to be "held and deemed at all times to be the principal of said second trust fund." "It is well settled," said the court in the case of In re Tower's Estate, 49 Minn. 371, at page 379, 52 N. W. 27, 29, "that, where a sale is directed in the instrument creating the trust, such sale is not in contravention of the trust, and that it is competent for a testator to provide for the termination of a trust in real estate by a power of sale incorporated in his will, and vested in the trustees or a third person."[1]

Again, in the same case at page 380:[1] "Under the construction given to the sections of the statute above referred to, it would seem to follow that, if the proceeds of lands converted into money by the trustees under a power of sale are thereafter to be held upon a trust valid as to such converted fund, the trust could be sustained as not in contravention of the statute forbidding the suspension of the power of alienation for more than two lives."

So, also, in Atwater v. Russell, 49 Minn. 22, at page 56,[2] it was held that where trustees were given the power to sell lands, there was no restriction upon alienation. Said the court:

"The clause in the codicil following the devise of land to the executors: 'And as soon as, in the judgment of my said executors, the same can be sold for a reasonable price (and not later than ten years after my decease), to sell the same, either in a body or in separate portions,' etc.—does not suspend the power of alienation for any period. The executors may not exercise the power till the end of the ten years, and ten years may extend beyond the duration of two lives. But that the power of alienation may not be exercised within the period prescribed by statute is not the test. The test is: Can it

1 [52 N. W. at page 30.]        2 [51 N. W. at page 629.]

be exercised, and a good title passed, within the prescribed period? The executors had the power to alienate and pass the title as soon as they qualified. That they are to sell as soon as in their judgment the same can be sold for a reasonable price does not limit the power to alienate and pass the title, and puts no restriction on their exercise of it beyond what the law would impose, though the clause were omitted."

Likewise in a case between the same parties (49 Minn. 57, 77, 78, 51 N. W. 629, 630) the court said: "For the reasons stated in the opinion in the will case (referring· to the case reported [49 Minn.] at page 22)[1] all being pertinent and forceful here, the power of the trustees to alienate this land and to pass the title in the fee to a purchaser was not suspended for any period of time."

Recurring, now, to the language of the trust here involved, it is at once apparent that the trustee, not only has the right to sell, but it is his positive duty to sell. Hence the trust does not violate the inhibition of subdivision 6 of the statute concerning restrictions upon alienation; and if it does not violate the provision thereof that "the trust shall not continue for a period longer than the life or lives of specified persons in being at the time of its creation, and for twenty-one years after the death of the survivor of them," it is valid as a trust in land under such subdivision, the correctness of which proposition is, we think, sufficiently demonstrated by our analysis of this subdivision in the first part of this opinion.

What, then, is the purpose of this limit upon duration? Can it be materially different from the purpose of the inhibition against restrictions upon alienation? And if a power and duty of sale in the trustee satisfies the latter, why not also the former? Furthermore, is it conceivable that there is any land which cannot be sold at its present, not future, real, not speculative, value, within 21 years, the shortest period possible under this limit upon duration? If land cannot be sold within that time, it would be safe to say that it had no value during such time, for the market price is the measure of value in the law. Would a court, called upon to aid in the administration of this trust, allow the expressed will of the donor that the trustee shall convert this land "at the earliest practical moment when such

1 [51 N. W. at page 624.]

conversion can be made without a sacrifice of the value," to be defeated by allowing the land to be held for 21 years? We venture to say that, if the instruction had been to sell "forthwith," a court would prevent a sale at a sacrifice. Is not, then, the direction here given practically. equivalent to an instruction to sell "forthwith?" If so, how can it be said that the trust exceeds the limit on duration, when the holding of it beyond the time when a court would direct a sale would constitute a breach of the trust? Subject to the limitations above mentioned, a trust may be created under subdivision 6 for any purpose whatever, provided, of course, it be not otherwise illegal. Hence land may be given to one person in trust to sell within any time certainly up to 21 years, and to pay the proceeds to another for any lawful purpose, which, under the conclusion above announced as to the scope of subdivision 5, might be a trust to invest for the benefit of a third person. Then why should the rule be different because the first person is eliminated and the second is made the recipient of both trusts?

But if there be doubt whether this trust can be sustained under subdivision 6 as a trust in land, it is certainly, under the decisions from which we have quoted, sustainable under subdivision 5 in connection with the doctrine of equitable conversion. See In re Tower's Estate, supra; Atwater v. Russell, supra. The only argument against this view which occurs to us would be that this doctrine cannot be invoked to evade a statute (3 Pomeroy, Eq. Jur. § 1166), but we have no such question here. The great majority of trusts might be made perpetual by continuous violation of their terms; but this is not the evil aimed at by the statute, which is in the main the tying up of the legal title. Where, therefore, even in the case of alleged evasions, the very purpose of a trust in land is to make an actual conversion thereof for a lawful purpose, we cannot see where there would be any evasion of the statute. If, however, on the trial it should appear that there was an actual attempt to evade the statute, then, of course, the question of the effect of such evasion upon the doctrine of equitable conversion would require consideration.

4. The provisions of subdivision 5 concerning the powers of the district court became operative only after the creation of the trust, and do not affect the validity of its creation. They are ample, how-

ever, to keep the trust within the bounds contemplated by the statute. Order reversed.