ARTHUR MEIGS AND RICHARD G. PETERS v. FERDINAND WELLER, GARNISHEE OF JAMES MERNAN.

90  629
117 259

*Fraudulent conveyances—Garnishment—Laches—Waiver—Evidence.*

1. Laches on the part of the plaintiff in failing to bring the statutory issue, framed in a garnishee case, to trial at the next term after the rendition of judgment against the principal defendant, is held to have been waived by the failure of the attorney for the garnishee to deny the truth of the statement, made by the plaintiff's attorney on the hearing of a motion to dismiss in behalf of the garnishee at the next succeeding term, that he had forfeited his right to a dismissal by consenting that the case stand from day to day, and not be taken up for trial before the first day of such succeeding term.

2. Where a creditor takes a deed and bill of sale purporting to convey to him absolutely all of his debtor's property, to whom

he gives a secret defeasance, and, acting under such deed and bill of sale as absolute owner, takes possession of the property, the value of which is largely in excess of his debt, and, after being summoned as garnishee of his debtor, sells the property as his own, and on the trial of the statutory issue refuses to state the value of the property, or what he sold it for, the transaction is a fraud upon the other creditors, and he is chargeable as garnishee for property and effects in his hands or under his control belonging to the principal defendant.

3. An experienced mill man and lumberman may testify to his opinion as to the value of saw-logs which he has never seen, upon reports made to him by his partner and an employe, who are both practical and expert woodsmen, and upon the strength of which reports the witness made an offer for the purchase of the logs.

Error to Muskegon. (Dickerman, J.) Argued January 8, 1892. Decided March 18, 1892.

Garnishment proceeding. Garnishee defendant brings error. Affirmed. The facts are stated in the opinion.

*Chamberlain & Sessions,* for appellant, contended:

1. Defendant's motion to dismiss should have been granted; citing How. Stat. § 8070; *Blake v. Hubbard,* 45 Mich 1; *Kiely v. Bertrand,* 67 Id. 332.

2. The liability of the garnishee defendant must be fixed as of the time of the service of the writ of garnishment; citing How. Stat. § 8059; *Martz v. Insurance Co.,* 28 Mich. 201; *Hopson v. Dinan,* 48 Id. 612; *Bethel v. Judge,* 57 Id. 379; and testimony of subsequent transactions is only admissible to show the value of the property at that time, or fraud upon the part of the garnishee defendant in handling or disposing of the property.

3. The conveyance from Mernan to Weller is absolute upon its face, and Weller went into possession of the property under the conveyance with Mernan's consent. He could dispose of the property at private sale to satisfy his claims, if such sale was sanctioned by Mernan, and was not unfair or dishonest towards Mernan's creditors; citing *Daggett v. McClintock,* 56 Mich. 51; and there is nothing in the record to show such non-consent, or that the sale was detrimental to the interests of plaintiffs.

4. The opinion of Hovey as to the value of the logs which he had

never seen was incompetent; citing *Flint v. Flint*, 6 Allen, 34; *Williams v. Bennett*, 82 Mich. 449; *Westlake v. Insurance Co.*, 14 Barb. 206.

*H. L. Delano*, for plaintiffs.

Morse, C. J. While plaintiffs may have been guilty of laches in not bringing this case to trial as required by the statute,[1] such laches, if any, was waived by the defendant.

Judgment was rendered against the principal defendant March 18, 1890. The next term of court was in May. If not brought on at that term by plaintiffs, the defendant might have moved to dismiss the case, but, instead of doing so, it appears from the record that when the motion was made on the 2d day of October, 1890, to dismiss the case for want of diligence in its prosecution, the counsel for plaintiffs stated in open court that, if the attorney for the garnishee defendant had the right to make this motion, he had forfeited it by consenting that "the case stand from day to day, and not be taken up for trial before the 1st day of October." The truth of this statement was not denied, and the court did not err in overruling the motion.

This case does not fall within the decision of this Court in *Daggett v. McClintock*, 56 Mich. 51.

The facts shown upon the trial are these: The firm of Hitchcock & Mernan were indebted to Weller, and he was also liable as indorser upon their notes. The whole indebtedness, including the notes, according to Weller's testimony was not more than $7,000. To secure this indebtedness, Weller took conveyances of all the property belonging to Hitchcock & Mernan, which conveyances were absolute in form. Mernan and wife deeded to him a shingle-mill and pine timber, and a bill of sale of

---

[1] How. Stat. § 8070.

personal property, consideration stated at $10,000, was
also executed by Mernan to Weller. These conveyances
were made on the 23d day of October, 1888. Weller
gave Mernan back a paper agreeing to reconvey this
property to him if the debt to Weller was paid within
one year. There were two mortgages on the shingle-mill
and real estate, amounting to about $1,800. Weller took
immediate possession of the property, and employed
Mernan to manage it, and was in such possession when
the garnishee proceedings were commenced. After such
proceedings were begun, Weller sold all this property to
the North Muskegon Shingle Company on the 14th of
December, 1888.

Mr. Weller, while on the witness stand, was asked
many questions in an endeavor on the part of plaintiff's
counsel to get at the value of the property that came
into his hands, but he persistently evaded any reply,
except that he did not know and could not tell. When
asked if he did not consider all the property worth at
least $10,000, his answer was: "Well, I might have con-
sidered it worth that; still I have no evidence that it was."
Nor did he testify what he received for the property.
As a witness he did not appear as one frankly seeking to
explain an honest transaction, but as one desirous of tell-
ing as little about it as he possibly could.

But evidence was given of the value of this property,
and competent evidence, in my opinion. Horatio N.
Hovey, an experienced mill man and lumberman of Mus-
kegon, testified that he was acquainted with the shingle-
mill, and familiar with the value of that kind of prop-
erty. He was also acquainted with the "value of logs
up river, and the value of stumpage; also with the value
of logs in the river." He testified that, in his opinion,
the value of this property turned over to Weller by
Mernan was between $18,000 and $20,000, and that he

offered $12,500 for it in December, 1888, or January, 1889, which offer was not accepted. This offer did not include the boarding-house, but simply the mill and personal property. He also made the same offer to Weller, before he sold it, but Weller wanted $20,000 for it. The personal property, according to Hovey's testimony, consisted principally of logs and lumber. Hovey examined the mill himself. He considered the mill property alone worth $8,000, the logs that were cut about $8,000 or $9,000, and the balance of the timber at between $3,000 and $4,000. There were a million and a half feet of logs cut and skidded in the woods. Hovey did not see the logs himself, but he sent two men to look them over, and they reported to him. One of these men was his partner, McCracken, and the other an employé, Tompkins, both practical and expert woodsmen. It seems to have been admitted by the questions of defendant's counsel that there were 1,600,000 feet of these logs cut and skidded in the woods, but that their value was only $3,600. I think it was competent for Hovey to testify what he thought these logs were worth, although he had never seen them, upon the report made to him by these parties. It was upon these reports that he made this offer, and it is upon such reports and estimates that timber and logs change hands daily in the lumber business. But, if this portion of his testimony is rejected, enough remains to show that the mill and machinery were worth within $800 of Weller's debt and the mortgages upon the property, and that this timber and logs could have been sold by Weller with the mill for $12,500, but that he wanted $20,000 for the property. There was no attempt made on the part of the defense to show what this property was really worth, or what Weller sold it for. On the contrary, the effort was persistent to keep its value out of the testimony. This transaction is

to me a transparent fraud, and it is not strange that the jury so found it.

The court instructed the jury that the deeds and bill of sale taken in connection with the paper given back to Mernan must be considered as a mortgage, and that, in order for the plaintiffs to recover, they must satisfy them by a fair preponderance of the evidence that the mortgage was void as against creditors, because of fraud connected therewith. The court fairly instructed the jury further as to what fraud would be necessary in order that the plaintiffs might recover. A mortgagee may not be chargeable with fraud because he takes a mortgage upon property largely in excess of his debt, when his debt is stated, and thus made open to all the world; but when a man takes an absolute deed or bill of sale of all his debtor's property, with a secret defeasance back, and, acting under such deed or bill of sale as absolute owner, takes possession of the property, and sells it as his own, and as if he were the absolute owner, and the property is worth twice his debt, or largely in excess of it, and he refuses to state its value, or what he sold it for, if such a course is not a fraud upon the other creditors, then I am at a loss to know what fraud is. It makes but little difference how it is done. If it is clear that the creditors have been willfully defrauded by the vendee in any instrument, deed or mortgage or bill of sale, there should be a remedy. And it makes no difference that the person taking such instrument, with intent to defraud creditors, is himself a creditor, if by means of such instrument and action under it the fraud is accomplished. At the best, Mr. Weller was only entitled to his debt and charges in collecting the same under his conveyances out of the property of Hitchcock & Mernan, or Mernan; and if, by such conveyances, he had knowingly defrauded the other creditors, and took the conveyances with such intent, he should be held

responsible to them for the value of the property, over and above his debt and charges. In this suit it was open to Mr. Weller, when the circumstances were shown indicative of fraud, to show up the whole transaction, and establish his honesty of intention and purpose, or that he received no more for the property than belonged to him. This he failed to do, and placed all obstacles which he could employ in the way of the plaintiffs in their efforts to ascertain what the transaction really was, and what was the value of the property received by him. When the writ of garnishment was served upon Weller he had not sold any of this property, but it is to be considered that he then held it for the purpose and use that he afterwards made of it. There was no foreclosure of any mortgage in such sale. He sold the property in the manner that the evidence of his ownership, placed in his hands by Mernan, authorized him to sell, to wit, by deeds and bill of sale. As Mernan was managing the property for Weller, it is to be presumed that he consented to such sale. At the time this suit was commenced it is evident that Weller had property and effects in his hands and under his control that belonged to Mernan. I can see no reason why the writ of garnishment would not lie.

I find no error in the proceedings, and the judgment will be affirmed, with costs.

McGrath, Long, and Montgomery, JJ., concurred with Morse, C. J.

Grant, J. *(dissenting)*. The judgment in this case against the garnishee defendant should not be sustained for several reasons.

1. Plaintiffs were guilty of laches in not bringing the case to trial as required by the statute. Judgment against the principal defendant was rendered March 18, 1890. The next term of the court was in May, at which

term plaintiffs did not notice the case for trial, and, so far as this record shows, no excuse is given for their failure to do so. The case was not tried till October following. *Blake v. Hubbard*, 45 Mich. 1; *Kiely v. Bertrand*, 67 Id. 332. When the case was called for trial defendant's counsel objected to proceeding, and moved to dismiss on the ground of this laches of the plaintiffs. Plaintiffs' counsel thereupon stated to the court that defendant had forfeited his right to raise this objection by consenting that the case stand from day to day, and not be taken up for trial before the 1st day of October. Nothing further appears upon the record about this matter than the above statement of counsel. It does not appear when the term began, nor how many days the court had been in session, nor what opportunities the defendant had had to make his motion. I do not think this statement of plaintiffs' counsel sufficient to establish a waiver or estoppel against defendant.

2. Defendant was a *bona fide* mortgagee in possession of the mortgaged property, and therefore not subject to garnishment under the plaintiffs' theory. Whether he could have been held under How. Stat. § 8065, we need not discuss, since the plaintiffs made no attempt to proceed under that section. *Daggett v. McClintock*, 56 Mich. 51.

3. The conveyances in this case were three in number; two being real-estate mortgages, one a chattel mortgage. They were absolute in form, but were in fact mortgages, as was conceded upon the trial; the defendant having executed a contract of the same date as the conveyances, to reconvey upon payment of the · sum which Mernan owed Weller. The obligations which defendant agreed to assume for Mernan amounted to $9,000. The property conveyed was subject to mortgages of $1,800. At the time the garnishee process was served defendant had

indorsed for Mernan notes to the amount of about $6,-000, and he was also indebted to the defendant in the further sum of $650. The only evidence of the value of the property was that of one witness, who testified that in his opinion it was worth from $18,000 to $20,000. The case was submitted to the jury upon the theory that these conveyances were fraudulent as to creditors. The principal, and in fact the only, reason urged as indicative of fraud was that the property mortgaged was of much greater value than the debt secured. It is too evident for argument that this was no evidence of fraud. A mortgagee cannot be charged with fraud because he has taken security upon property whose value may largely exceed his debt. . Yet the court instructed the jury, in substance, that they would be justified in finding fraud from that circumstance. He charged them as follows:

, "He would have a right to secure one creditor if it was done in good faith, and give a mortgage upon his property for a reasonable amount to secure the debt and claim. And that is one of the principal things and reasons urged here by counsel for plaintiffs, and which they claim tends to show fraud,—that this mortgage was given upon an amount of property that was unreasonable in amount, or was more than was reasonable to secure Mr. Weller for any indebtedness then existing, or for any liability that might have been incurred. That, perhaps, is the most prominent question you will have to consider here, and you should consider it very carefully, and all the testimony bearing upon this point."

4. There was no evidence showing the value of the personal property covered by the chattel mortgage. The sole witness as to value included the real and personal property in his estimate. A mortgagee of real estate cannot be made the subject of garnishee proceedings until he has foreclosed his mortgage, and has received from the sale a surplus over his mortgage debt. But under

foreclosure proceedings in this State such surplus would not go into the mortgagee's hands. If, by the consent of the mortgagor, the mortgagee should sell the land at private sale, undoubtedly this proceeding would reach money so in his hands; but at the time of the commencement of this suit the defendant had neither foreclosed his mortgage nor sold the land. If the plaintiffs claimed that these deeds were fraudulent as to them, they should have proceeded by attachment and creditors' bill, in accordance with the statute.

5. The testimony of the witness of the value of the property was incompetent. His opinion was based, not upon personal knowledge, but upon the statements of others who, he said, had examined the property, and reported to him.

The principal judgment in this case was against two partners, and it is insisted on behalf of the defendant that the garnishee proceedings will not lie against a debtor of one of such joint principal defendants. Such was the law previous to the act of 1885. *Ford v. Dry Dock Co.*, 50 Mich. 358; *Farwell v. Chambers*, 62 Id. 316. But the act of 1885,[1] though it amended only the first section of the garnishee law, expressly confers the right to this proceeding. The Legislature clearly understood that the subsequent provisions of the statute were ample in providing the method of procedure. We see no difficulty in holding them applicable.

For the other reasons above given judgment should be reversed. Possibly the plaintiffs might be able to cure these errors, and a new trial should therefore be granted.

[1] Act No. 128, Laws of 1885.