# ARTHUR LARSEN v. AGNES ERICKSON, FORMERLY AGNES LARSEN, AND ANOTHER.[1]

October 25, 1946.

No. 34,232.

[1]Reported in 24 N. W. (2d) 711.

*Alfred A. Donaghue* and *Mart M. Monaghan,* for appellants.
*Parker & Parker,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action to determine adverse claims to certain real estate in Hennepin county. Plaintiff prevailed, and defendants have appealed from the resulting judgment. After entry of judgment, they moved in the alternative for amended findings or a new trial. This being denied, they also appealed from that order.

The facts were stipulated and were adopted by the trial court as its findings. These show that during all the time hereinafter stated plaintiff was and still is the owner in fee and in possession of the involved property. Such ownership and possession existed during the time he and defendant Agnes were husband and wife. On July 14, 1939, Agnes secured a divorce from plaintiff in an action brought by her for that purpose in the state of Nevada. The validity of that divorce is not questioned. By virtue thereof, there was a complete severance of the marriage status, but no property rights were there determined, nor was there any provision for alimony. There is no claim that Agnes had asked for any relief with respect to these matters. There is no suggestion that the Nevada court lacked jurisdiction over the marriage status or of the

parties to the cause. Since that decree was entered, both plaintiff and Agnes have remarried. The defendant Harold V. Erickson is Agnes's present husband. The only issue is shown by the record in this way (Record, p. 15, folio 3):

"The Court: Do I understand, Mr. Donaghue, that your client claims a dower interest in this real estate?

"Mr. Donaghue: Yes, sir, that's the proposition."

Defendants' claim is that Agnes, at the time of the Nevada divorce, had an inchoate interest in plaintiff's property and that, since she has not surrendered that right and since the divorce decree made no provision for her, her interest still remains, and that the trial court erred in holding that her inchoate estate has been eliminated by reason of the divorce.

If defendants' position is to be sustained, there obviously will arise many difficulties not heretofore encountered here or elsewhere. If plaintiff's present wife and Agnes both survive plaintiff, their rights and interests in this property will necessarily come into direct and irreconcilable conflict. According to defendants' theory, Agnes will take first place, since she was his lawful wife when this property was acquired. And such is her contention now. The divorce, she thinks, does not exclude her from taking her statutory interest as it was immediately prior to the divorce.

We think the theory presented by Agnes is wholly untenable under our statutory and decision law.

We have said that "In the United States all divorce jurisdiction is statutory"; also, that as to divorce "our district court has no power in the premises not delegated to it by statute." Ostrander v. Ostrander, 190 Minn. 547, 549, 252 N. W. 449, 450. Ever since State v. Armington, 25 Minn. 29, 37, was decided, our settled law has been that "To each state belongs the exclusive right and power of determining upon the status of its resident and domiciled citizens and subjects, in respect to the question of marriage and divorce, * * *."

While the Nevada court had jurisdiction of the parties to this action, it "seized nothing but the marriage status. * * * Nothing

else was seized. No property was seized or came in question, and the property in this state could not be so seized" in the circumstances here disclosed. Thurston v. Thurston, 58 Minn. 279, 285, 59 N. W. 1017, 1018. "* * * it is the marriage status, not the cohabitation, which is subject to the jurisdiction of the court." Rose v. Rose, 132 Minn. 340, 342, 156 N. W. 664, 665. Without doubt, the Nevada court's findings and decree that "Agnes Nelsina Larsen, be, and she hereby is granted an absolute divorce from the defendant, Arthur L. Larsen, on the ground of extreme cruelty," constitute a final and conclusive adjudication, valid anywhere, that their marriage status has been completely severed.

This, then, brings us to the only question presented here: Did the divorce in the circumstances here shown divest Agnes "of her dower rights" in her husband's real property in this state?

In Morrison v. Rice, 35 Minn. 436, 29 N. W. 168, an interesting and important question came before this court. In substance, these were the facts: Plaintiff's husband was seized of the land in controversy on and prior to June 8, 1866. Plaintiff was then his wife. On that day he conveyed the land to one Moses, under whom, through mesne conveyances, defendant claimed title. The husband died in April 1877, survived by plaintiff, his widow. She did not join in her husband's deed to Moses. In that case we said (35 Minn. 437, 29 N. W. 169):

"* * * But before the decease of her husband the act of March 9, 1875, (Laws 1875, c. 40,) was passed, abolishing dower. This act gave the surviving wife a life-estate in the homestead, and one-third in fee of all other real estate of the husband of which he died seized. The plaintiff had then no certain or vested interest in her husband's lands. Her estate was in expectancy merely, contingent on her surviving him.

"Dower is not the result of the marriage contract, but is a provision which the law makes, founded on public policy, for the benefit of the wife, as an incident to the marriage relation, and contingent upon the seizin and death of the husband. Before the right of dower becomes fixed and consummated by his death, it is therefore

subject to legislative control, and may be modified or taken away. [Citing cases.]

"After the passage of the act of 1875 the land in question no longer remained subject to plaintiff's contingent right of dower, and the grantee of her husband held the same divested of such claim."

In substance and effect, that was our decision in Stitt v. Smith, 102 Minn. 253, 255, 113 N. W. 632, 633, 13 L.R.A.(N.S.) 723, where we quoted from a case decided by the Supreme Court of the United States, saying:

"* * * 'During the life of the husband, the right is a mere expectancy or possibility. In that condition of things the lawmaking power may deal with it as may be deemed proper.' * * * That the interest is not a vested one, but purely contingent upon the death of the husband, has been repeatedly announced in many decisions of this court, * * *. If the wife has no vested interest in the estate of the husband during his lifetime, and her inchoate interest becomes vested only upon his death, it follows that she has no right, title, or interest which gives her standing in a court of law to assert it, except in those cases specifically provided by statute."

Minn. St. 1945, § 525.145(1),[3] provides:

"Where there is a surviving spouse the homestead shall descend free from any testamentary or other disposition thereof to which such spouse has not consented in writing or by election to take under the will as provided by law, * * *."

Section 525.16(2),[4] so far as here material, reads:

"Real property: To the surviving spouse an undivided one-third of all real property of which the decedent at any time while married to such spouse was seized or possessed, to the disposition whereof by will or otherwise such survivor shall not have consented in writing or by election to take under the will as provided by law, * * *."

---

[3]See, M. S. A. § 525.145(1), and cf. Mason St. 1940 Supp. § 8992-27(a).

[4]See, M. S. A. § 525.16(2), and cf. Mason St. 1940 Supp. § 8992-29(2).

368

By § 518.27[5] it is provided:

"When a decree of divorce from the bonds of matrimony is granted in this state, such decree shall completely dissolve the marriage contract as to both parties."

While it is true that the divorce here involved was not "granted in this state," the fact remains that the marriage status and the parties were within and subject to the jurisdiction of the Nevada court. Nothing was decided by that court except that the marriage contract was annulled. That is the only thing pertinent here. And, since that court had jurisdiction of the subject matter and of the parties, we can see no reason why that is not all that is necessary as a basis for determining the issues here presented.

It will be noted that under our law there must be a surviving spouse before the inchoate right becomes a reality. As we held in the Stitt case, 102 Minn. 255, 113 N. W. 633, 13 L.R.A. (N.S.) 723, the law gives such a spouse an inchoate interest in the husband's real estate "as an incident to the marriage relation, and contingent upon the seisin and death of the husband." Obviously, then, the marriage relation here having been severed by a court of competent jurisdiction and there being no question involved except that of the statutory interest given the "surviving spouse," neither defendant has or can have any claim in or to plaintiff's property. When Agnes entered into a new marriage relation with her codefendant, she acquired under our statute, as to real estate owned by him or later acquired during coverture, the same inchoate right as she formerly had before her divorce from plaintiff. Obviously, she cannot successfully lay claim to interests in the property of both of them, since in no event can she be the surviving spouse of two husbands.

We think the trial court correctly disposed of the case. The judgment and order are both affirmed.

Affirmed.

---

[5]See, M. S. A. § 518.27, and cf. Mason St. 1927, § 8607.