WINNIFRED B. ATWOOD AND ANOTHER v. DONALD S. HOLMES AND OTHERS.

ARTHUR G. RYAN, APPELLANT.[1]

June 20, 1947.

No. 34,325.

*Royal G. Bouschor* and *McCabe, Gruber, Clure, Donovan & Crassweller,* for appellant.

[1]Reported in 28 N. W. (2d) 188.

*P. A. Burke* and *James J. Courtney & Son,* for respondent Winnifred B. Atwood.

*A. G. McKnight,* for respondent A. G. McKnight as guardian *ad litem* of Thomas G., Alexander B., and Joyce W. Atwood.

*Holmes, Mayall, Reavill & Neimeyer,* for respondent trustees and William E. Atwood.

MAGNEY, JUSTICE.

Winnifred B. Atwood, on her own behalf and, originally, as natural guardian of her three minor children, Thomas G., Alexander B., and Joyce W., brought action to procure a declaratory judgment as to the meaning and proper construction of the terms of a living trust created by Herbert J. Atwood during his lifetime. The action was brought against the trustees of the trust; William E. Atwood as residuary legatee of the estate of Jay H. Atwood, deceased; Arthur G. Ryan as administrator of the estate of Roland H. Tietze, deceased; and William E. Atwood. The court made findings of fact, conclusions of law, and order for judgment. Ryan, as administrator of the estate of Roland H. Tietze, appeals from the order of the court denying his motion for amended findings or a new trial.

Herbert J. Atwood, a widower and a resident of the city of Duluth, 69 years of age, created a living trust by a written instrument dated December 14, 1935. He was the president and the owner of practically all the stock of the Atwood-Larson Company, a grain commission firm, operating in the city of Duluth. He had four children, Jay H., Eva, George H., and William E. Atwood. Jay and William were unmarried. Eva was married to Roland H. Tietze and had no children. George was married to plaintiff Winnifred, and they had three children, mentioned above. Herbert J. Atwood had been successful in business and had acquired a considerable amount of property. For reasons which he sets out in the instrument itself, he created a living trust, turning over to himself and 13 other individuals, four being his three sons and his son-in-law, as trustees, the larger part of his holdings. He expressed the reasons for the creation of the trust in the following language:

"Herbert J. Atwood, the donor above named, desiring that his children hereinafter named may, by means of this trust, be at once independently established with competencies sufficient to assure their support and maintenance; that such children may, as co-trustees of this trust, become familiar with the risks, burdens, details and methods of an active business, under the supervision of said donor and in association with the experienced and able men who will be co-trustees hereunder; that the donor may, as he sees fit, during the years to come, be in a position to gradually relieve himself of the sole care and management of the properties now and hereinafter conveyed to this trust; and that the high surtaxes on income now in force, and the higher surtaxes on such income which it appears may be established by both state and federal governments, may be avoided as far as lawfully may be through the division of the income producing property of the donor hereby effected, hereby establishes and declares this irrevocable trust, to be known as the 'ATWOOD FAMILY TRUST', * * *."

He thus intended to provide support and maintenance for his four children; a business training for the three sons and the son-in-law through their association with himself and other successful and competent businessmen in the handling of a large, active business; an opportunity for him gradually to relieve himself of the sole care and management of the properties conveyed; and a means of avoiding high income and surtaxes as far as lawfully might be done through the division of his income-producing property. Although he gives four reasons for the creation of the trust, it is apparent from the provisions set out in the main body of the instrument itself that his uppermost intention was to provide adequate support and maintenance for his four children; in other words, to provide security for them.

He transferred to the trustees 3,600 shares of the capital stock of the Atwood-Larson Company, a Minnesota corporation, 250 shares of the capital stock of the Atwood Stock Farm Company, an Iowa corporation, 24 shares of the capital stock of the Farmers Grain Company of Grandin, North Dakota, and 48 shares of the capital

stock of the Argusville Farmers Elevator Company of Argusville, North Dakota. He divested himself of all beneficial interest in the property transferred to the trustees. The Atwood-Larson Company was the corporation under which he did business. Its assets represented the financial result of his lifework, and the Atwood Stock Farm Company owned his boyhood home in Iowa. At the time of the creation of the trust, a gift tax was paid on the basis of a gift in equal value to each one of settlor's four children. The trustees set up and established the value of the trust property at $412,400, which was the valuation placed on the shares of stock by the settlor in his gift tax return and the valuation accepted by the bureau of internal revenue. Thus, originally, each of settlor's four children had an interest of some kind in property valued at $103,100. The 3,600 shares of capital stock of the Atwood-Larson Company did not represent all the shares of that company owned by settlor. Something less than 5,000 shares had been issued, and settlor retained ownership of a substantial part of the balance, his children also being the owners of some of this stock. The 3,600 shares were valued at par, or $360,000. The 250 shares of the Atwood Stock Farm Company comprised all the shares of that company and were valued at $200 per share. The stock of the other two companies was of small value.

In November 1937 settlor died. The same year his youngest son, William, married. On July 8, 1939, Eva Atwood Tietze, settlor's daughter, died testate, all her property being willed to her husband, Roland H. Tietze, who died within a few hours of Eva. He left no will, and Arthur G. Ryan was appointed administrator of his estate. On August 5, 1942, George H. Atwood, settlor's second oldest son, died, leaving surviving him his widow, Winnifred, and three minor children, already named. On January 22, 1943, Jay H. Atwood, settlor's eldest son, died testate. He left no spouse or children and by his will bequeathed his property to his brother William. Thus, by January 1943, three of settlor's four children had died, the youngest son, William, alone surviving. He is and has been ever since its creation a trustee of the trust.

We are asked to construe certain terms of the trust instrument, and this we must do from the language of the instrument itself. The record is practically barren of any other information from which the intent of the settlor may be ascertained. It does disclose that he had a natural affection for his children, their spouses, and his grandchildren, and that is about all. The instrument itself discloses that he had little confidence in the business judgment and discretion of his children or in their ability or desire so to manage their lives and affairs that they might enjoy the ordinary comforts and necessities of life.

The sole question at issue here is whether Roland H. Tietze acquired an inheritable interest in Eva's share of the Atwood-Larson Company and the Atwood Stock Farm Company so that his personal representative and his heirs succeed to any interest therein. The question submitted to us involves a determination of settlor's intent as to the extent and nature of the interest, if any, in certain stocks held in trust, of a surviving spouse upon the death, before the termination of the trust, of one of settlor's four children. It becomes necessary to quote extensively from the trust instrument in order to present the picture.

Section V, headed "Beneficial Interests in Trust and Disposition of Net Income and Principal," contains most of the provisions of the instrument with which we are here concerned. The fourth paragraph of Section V, for convenience designated (d), reads:

"Whenever, after each of said beneficiaries arrives at the age of forty-five (45) years, the donor and at least three concurring trustees other than the beneficiaries, or if the donor be then dead or under disability, then the trustees, shall determine that such beneficiary has sufficient knowledge, judgment and discretion to have and control his or her share of the trust fund, but not otherwise, then said share thereof (except only the beneficiary's share in such stock of Atwood-Larson Company and Atwood Stock Farm Company as may then remain in the trust), together with any accumulations of the share of income to which such beneficiary is entitled, shall be

paid over and delivered to such beneficiary absolutely and free from any trust."

Thus, whenever any one of settlor's four children arrives at the age of 45 years, if found qualified in the manner specified, his or her share, together with accumulations, shall be paid to the beneficiary, *except only the beneficiary's share in such stock of the Atwood-Larson Company and the Atwood Stock Farm Company as may then remain in the trust.* Under this provision, nothing happens to the shares of stock in these two corporations, even if the child has reached the age of 45 and has been found competent, but *all* of the net income from said shares of stock shall thereafter be paid to such distributee, as set out in the succeeding paragraph, instead of only so much of the income as the trustees may determine.

The fifth paragraph of Section V, designated (e), reads:

"Provided, however, that if at the time of any distribution of principal hereinbefore or hereinafter provided for there shall remain in the trust any capital stock of Atwood-Larson Company or Atwood Stock Farm Company, neither the same nor any property or money in lieu thereof, shall be distributed, *but that portion of such stock corresponding to the share of the trust to which the distributee is entitled, shall continue to be held in trust* for such distributee, any net income therefrom being thereafter currently paid to said distributee, and the same or the proceeds thereof shall, upon the termination of the trust, or the earlier sale or liquidation of any of said stock by the trustees, be paid over to such distributee, or if he be dead, then as hereinafter provided. *The trust shall not terminate so long as any stock of said Atwood-Larson Company remains in the trust, until the death of the last survivor of said four children* of the donor, at which time the trust shall, in any event, terminate and all trust property be distributed as herein provided." (Italics supplied.)

The sixth paragraph of Section V, designated (f), reads:

"If any of said four children of the donor shall die prior to the time for any distribution to him or her of principal or accumulations of the trust, and leave a spouse surviving, then and in such event

one-third of any such distribution to which such deceased child would then be entitled if he were living and forty-five years of age and competent to receive his or her share as above provided, shall be immediately paid over and distributed to such spouse, and the balance of any such distribution (or if there be no surviving spouse, then the whole thereof) shall be held and distributed as follows:

[Paragraph (g), Section V.] "If such deceased child shall have left issue surviving him, then and in such event the same shall be distributed in equal shares to such issue or their legal guardians for them.

[Paragraph (h), Section V.] "If such deceased child shall have left no issue surviving him, then the property to be so distributed, together with the child's share in any stock of Atwood-Larson Company and Atwood Stock Farms Company in the trust, shall be added to and become part of the share or shares of the then surviving children of the donor (and of the issue of any deceased) in proportion to their respective shares, and shall be thereafter held and distributed as part of such shares as herein provided.

[Paragraph (i), Section V.] "If at the time for any distribution hereunder there shall be surviving none of said children of the donor, nor any issue of any of them, distribution of all the trust property *(after any surviving spouse of any of said children shall have first received one-third of the share of such child)* shall be made to such persons as would then be the heirs at law of the donor had he then died intestate and a resident of Minnesota, in the same proportions to which they would be entitled under the laws of said state. * * *" (Italics supplied.)

The trial court interpreted the language of the trust instrument to be that settlor intended the interest of Roland Tietze in the stocks of the Atwood-Larson Company and the Atwood Stock Farm Company to terminate at his death and that his heirs should take no interest therein under a will or statute of descent.

█ In its memorandum, the court sets out its interpretation of settlor's intent as follows:

"* * * that the surviving spouse of a child of Mr. H. J. Atwood [the settlor] who dies before attaining the age of 45, or, after attaining that age but before termination of the trust, does not thereupon succeed to a vested one-third interest in the deceased child's share of the Atwood-Larson and Atwood Stock Farm stock, but only to the net income therefrom; *but if living at the termination of the trust,* then he or she takes absolutely in her own right one-third of the deceased spouse's share in these stocks; but if such surviving spouse does not survive the termination of the trust, then that one-third share goes to the surviving issue of the deceased child, if any." (Italics supplied.)

Appellant's contention is that a proper construction of the language of the trust compels a holding that settlor intended that upon the death of a child of his the surviving spouse of such child should be entitled absolutely to one-third of such child's share in the entire corpus of the estate; that the trust so far as it applied to such child should be at an end; and that one-third of the stocks should belong to the spouse of the child so dying. He further contends that, in the event that the spouse and issue both survive the child, then the remaining two-thirds of the share of settlor's child shall be paid over to the surviving issue, or their legal guardians, thus ending the trust of such child's share; and, in the event that no issue survive, then the remaining two-thirds share would be held in trust for the benefit of the surviving children of settlor. The construction the court places upon the language of the trust has been accepted by the trustees and all parties interested in the trust except the administrator of the estate of Tietze. His contention, restated in other words, is that his intestate, on the death of Eva Tietze, became immediately entitled to receive outright and free from trust one-third of all her share of the trust estate, including one-third of her share in the stocks, and that this right is now vested in his representative. He claims that the share of Eva vested at the time of her death. He suggests that the instrument created four separate trusts, and that each one terminated on the death of the original beneficiary.

Settlor designated the trust he created as the "Atwood Family Trust." It appears to us that the language used in the instrument creates but one trust, not four separate trusts, and that that was settlor's intention. We do not deem it necessary to detail the bases for this opinion.

Settlor directed when, how, and to what extent the trustees should pay to the named beneficiaries out of the net income of the trust, and provided that the balance of each share of net income not so paid over be accumulated and accounted for as principal belonging to the share in the trust fund of the beneficiary in question. Thus, he did not intend in the first instance that the whole income be paid over to the original beneficiaries.

As to when and under what conditions the share of the trust fund and its accumulations was to be paid over to each original beneficiary is set out under paragraph (d), of Section V, which we have already quoted. Settlor there directs that whenever, after each of the beneficiaries arrives at 45 years of age, it is determined, in the manner there set out, that the beneficiary measures up to certain qualifications, there also set out, "then said share thereof *(except only the beneficiary's share in such stock of Atwood-Larson Company and Atwood Stock Farm Company as may then remain in the trust)*, together with accumulations * * *, shall be paid over and delivered to such beneficiary absolutely and free from any trust." (Italics supplied.) Thus, even if the original beneficiary, a child of settlor, qualifies as to age and competency, the trustees are not authorized to turn over to him or her any stock of the Atwood-Larson Company or the Atwood Stock Farm Company remaining in the trust. The trust instrument, in the following paragraph, provides that neither such stock nor any money or property in lieu thereof shall be distributed, but shall be continued to be held in trust for such distributee, but any net income therefrom shall thereafter be currently paid to such distributee, and the stock or the proceeds thereof shall, upon the termination of the trust, be paid over to such distributee, or, if he be dead, then as provided in the trust instrument. Settlor directed that the trust should not terminate so long

as any Atwood-Larson Company stock should remain in the trust until the death of the last survivor of his four children, "at which time the trust shall, in any event, terminate and all trust property be distributed * * *."

Eva Atwood Tietze died testate in 1939. She was the first of settlor's four children to die. She left a spouse, but no children. The trust instrument, by paragraph (f) of Section V, made provision for such a contingency. It provides that in such a case "one-third of any such distribution to which such deceased child would then be entitled if he were living and forty-five years of age and competent to receive his or her share as above provided, shall be immediately paid over and distributed to such spouse, * * *." We have already considered what a child living, 45 years of age, and competent would receive. Restating it again, he or she would receive under the terms of the trust instrument his share of the trust, together with any accumulations of the share of income to which such beneficiary would be entitled, but he or she would not receive the beneficiary's share in any stock of the Atwood-Larson Company or the Atwood Stock Farm Company remaining in the trust. Therefore, Eva Atwood Tietze's spouse, at her death, would be entitled to receive one-third of Eva's share of the trust, together with accumulations, except Eva's share in any stock of the Atwood-Larson Company or the Atwood Stock Farm Company then remaining in the trust.

Since Eva left no issue, the balance of her share would have to be added to and become a part of the shares of the three other then surviving children of settlor in proportion to their respective shares, to be thereafter held and distributed as part of such shares.

In 1942, George H. Atwood died, leaving a spouse and three children. Winnifred B. Atwood, the surviving spouse, would then receive a one-third share of the trust estate similar to that of Roland H. Tietze, the spouse of Eva, and the balance would be distributed in equal shares to her three children or their guardians, except George's share in any stock of the Atwood-Larson Company or the Atwood Stock Farm Company then remaining in the trust. At that time, as far as the record shows, all such shares still remained in the trust.

In 1943, Jay Atwood, a child of settlor, died, leaving neither spouse nor issue. The property to be distributed, together with his share in any stock of the Atwood-Larson Company and the Atwood Stock Farm Company in the trust, was added to and became part of the share or shares of the then surviving children, in this case William, the only surviving child, and the children of George, in proportion to their respective shares.

Roland H. Tietze died a few hours after the death of Eva. He did not, of course, survive the termination of the trust. Winnifred Atwood, spouse of George, is still alive.

The trust instrument in paragraph designated (i) of Section V states:

"If at the time for any distribution hereunder there shall be surviving none of said children of the donor, nor any issue of any of them, distribution of all the trust property *(after any surviving spouse of any of said children shall have first received one-third of the share of such child)* shall be made to such persons as would then be the heirs at law of the donor had he then died intestate and a resident of Minnesota, * * *." (Italics supplied.)

It is evident from the above that if a surviving spouse of any of settlor's children should be still alive at the time of the distribution of the trust fund, after all the children of settlor had died, such surviving spouse would receive one-third of the share of such child. So, if Winnifred Atwood is living at the time of the termination and distribution of the trust fund and the death of the last survivor of the settlor has taken place, she would be entitled to one-third of the share of her deceased husband, George. This is all on the assumption that settlor created a valid living trust.

In order to receive the one-third share of a child, the surviving spouse must be alive at the final distribution of the trust estate. We do not see how the words may be given any other interpretation. Tietze is dead. The time for distribution has not arrived as to the stocks in question. His heirs take nothing. Winnifred is still alive. She still has a possibility of receiving one-third of George's share in the stock. Her right is expressly contingent on her survival to the

distribution date. If the share of the trust were to vest at the time of the death of a child, there would have been no need of having "surviving spouse" provisions in the trust instrument. Settlor denied his children the right to receive the stock at 45 years of age, even if competent. There seems no good reason why he should have intended to give a surviving spouse of such child a greater interest than he was willing to give to the child himself. Possession and control of these stocks by surviving spouses might give them such strength in the management of the corporations as to wreck settlor's whole scheme. It is apparent that settlor intended to keep the ownership and control of the two stocks under the control of the trustees until the termination of the trust, and thereafter, if the stocks have not been disposed of, except to the extent that provision was made for the then surviving spouse of any child who might have died. In paragraph (h), it is provided that if a deceased child shall have left no issue surviving him then the property to be distributed, together with the *child's share* in any stock of the Atwood-Larson Company and the Atwood Stock Farm Company in the trust, shall be added to and become part of the share or shares of the then surviving children of the donor (and of the issue of any deceased) "in proportion to their respective shares, and shall be thereafter held and distributed as part of such shares as herein provided." This paragraph in itself would indicate that it was settlor's intention that no part of the child's share in any stock of the companies mentioned should go to a surviving spouse. The "child's share" means *all* the child's share. Thus, the shares of stock are disposed of as part of the "balance" remaining for disposition after giving the spouse everything to which he or she was entitled under paragraph (f), which we have heretofore considered.

In paragraphs (j) and (k) of Section V, settlor authorizes respectively the trustees in the making of any distribution to "do so in money, securities or other property," and not necessarily a transfer of the stocks, and "If at *any time* the trustees shall deem it to be for the best interests of any beneficiary of this trust at the time of any distribution to him, they may expend any part, or all of any

distribution to which such beneficiary is entitled in the *purchase of an annuity,* \* \* \*." (Italics supplied.) The theory that the title to the stocks vested at the time of the decease of a child of settlor can find no support in these provisions.

At the time he created this trust, settlor could hardly have had in mind the probability or possibility of the happening of events in connection with the passing of his children as they did happen and the resulting situations created, but the terms of the instrument which created his trust are adequate to cover every situation that it has encountered.

2. Appellant contends that under the provisions of the trust agreement the power of the trustees to sell and dispose of the stock of the Atwood-Larson Company is so restricted that the power of alienation is suspended during the life of the trust, and that, since the trust may continue for the lives of the four children of settlor, this suspension is for a longer period than during the continuance of two lives in being as defined by M. S. A. § 500.13, subd. 2.

In paragraph (g) of Section IV of the trust instrument, we find the language upon which appellant bases his contention. It reads:

"It is the desire and direction of the donor, and is hereby agreed, that Atwood-Larson Company shall continue in business, and that any stock of said company now or hereafter placed in trust, shall not be disposed of by the trustees, unless (1) in the judgment of the trustees, there shall be no reasonable probability that the company can be further profitably operated, or unless (2) an opportunity arises for the sale or disposal of the stock of said corporation in the trust, or of the properties or business of said corporation, on such terms that the trustees are clearly of the opinion that the best interests of this trust and of the beneficiaries thereof demand such sale or disposition, and so determine by formal resolution, adopted after full discussion, at a meeting of the trustees, by the affirmative vote of seven trustees, including not more than two beneficiaries, as above provided. In arriving at their conclusions in this connection the trustees will recognize that due to the vicissitudes to which the grain business conducted by said company is subject, the fact that losses

may be incurred during any year or years will not necessarily indicate that it may not be operated profitably in the future, or under more normal conditions."

There is some question whether the Minnesota limitation on suspension of alienation applies to personal property, other than chattels real, constituting all or part of the corpus. Dean Everett Fraser in his article *The Rules Against Restraints on Alienation, and Against Suspension of the Absolute Power of Alienation in Minnesota,* 9 Minn. L. Rev. 314, says on p. 341:

"A power of sale in the trustee obviates a suspension that might otherwise invalidate a trust. The statutory rule against suspension of the power of alienation applies only to real property. If the real property the subject matter of the trust is alienable, the rule is satisfied."

See, also, In re Tower's Estate, 49 Minn. 371, 52 N. W. 27; Y. M. C. A. v. Horn, 120 Minn. 404, 139 N. W. 805; Congdon v. Congdon, 160 Minn. 343, 361, 200 N. W. 76, 82; Erickson v. Erickson, 197 Minn. 71, 80, 266 N. W. 161, 267 N. W. 426, 427. There is no object in going into a discussion of this question, as we have come to the conclusion that the language of paragraph (g) of Section IV, quoted above, does not suspend the power of alienation.

The trustees are authorized to sell the stock of the Atwood-Larson Company when *in their judgment* there is no probability that the company can continue to be profitably operated. Also, they are authorized to sell whenever an opportunity arises for the sale of the stock on such terms as the *trustees are of the opinion* that the best interests of the trust and beneficiaries will be served. Seven (a bare majority) of the trustees may by resolution express such *judgment* or *opinion* and act thereon. We find no unlawful restraint of alienation in the language used.

That settlor anticipated that the trustees would dispose of shares of stock in the two corporations is evidenced by the use of certain expressions in the trust instrument. In paragraph (d) of Section V he states:

"\* \* \* (except only the beneficiary's share in such stock of At-wood-Larson Company and Atwood Stock Farm Company *as may then remain in the trust),* \* \* \*." (Italics supplied.)

In paragraph (e) of Section V he states:

"Provided, however, that if at the time of any distribution of principal hereinbefore or hereinafter provided for *there shall remain in the trust any capital stock* of Atwood-Larson Company or Atwood Stock Farm Company, \* \* \*." (Italics supplied.)

In the same paragraph he refers to the *"earlier sale or liquidation of any of said stock* by the trustees." (Italics supplied.) Also, in the same paragraph, he states:

"\* \* \* The trust shall not terminate so long *as any stock of said* Atwood-Larson Company *remains in the trust,* \* \* \*." (Italics supplied.)

In paragraph (h) of Section V he uses this language: "the child's *share in any stock* of Atwood-Larson Company." (Italics supplied.) In paragraph (j) of Section V, where it is provided that in making any distribution of principal the trustees may do so in money, securities, or other property, settlor must have contemplated the sale of the stock by the trustees; and in paragraph (k), where, at the time of distribution to any beneficiary, trustees are authorized to expend any or all of any distribution to which such beneficiary is entitled in the purchase of an annuity, settlor must have contemplated the sale of the stock and in his mind must have had no intention of suspending the power of alienation. He did make some suggestions for the trustees to keep in mind in disposing of such stock, but, as we see it, they were mere suggestions and not a suspension of the power of alienation.

In Atwater v. Russell, 49 Minn. 22, 56, 51 N. W. 624, 629, where the court held that a devise of real estate to executors, in trust to sell as soon as in their judgment the same could be sold for a reasonable price, did not suspend the power of alienation, it said:

"The clause in the codicil following the devise of land to the executors: 'And as soon as, in the judgment of my said executors, the same can be sold for a reasonable price, (and not later than ten years after my decease,) to sell the same, either in a body or in separate portions,' etc.,—does not suspend the power of alienation for any period. The executors may not exercise the power till the end of the ten years, and ten years may extend beyond the duration of two lives. But that the power of alienation may not be exercised within the period prescribed by statute is not the test. The test is, can it be exercised, and a good title passed, within the prescribed period? The executors had the power to alienate and pass the title as soon as they qualified. That they are to sell as soon as in their judgment the same can be sold for a reasonable price does not limit the power to alienate and pass the title, and puts no restriction on their exercise of it beyond what the law would impose, though the clause were omitted."

In the companion case, Atwater v. Russell, 49 Minn. 57, 51 N. W. 629, a deed contained certain provisions which it was claimed suspended the power of alienation. The clause was practically the same as the one in the will case. The period of time within which the trustees should sell was limited to ten years next ensuing, and provided that the sale should be made (49 Minn. 60, 51 N. W. 629) "As soon as in the judgment of my said trustees the said lands can be sold for a reasonable price compared with other lands in the vicinity, * * *." The court said (49 Minn. 78, 51 N. W. 631):

"* * * To determine the merits of this claim there must be made a critical, but not captious, examination of the whole deed, that we may discern, if possible, the intent, plan, and purpose of the grantor, bearing in mind that it is the policy of the law not to seek grounds to avoid a conveyance, but to endeavor to uphold it, if it can be done on sound legal construction.

"* * * Instruments of this nature should be construed as if the rule against suspension did not exist, and only after the meaning has been determined may the rule be applied to learn whether the

provisions are valid. And the rule is constantly subordinated to another rule,—that, where there is fair room for two constructions, the instrument should be preserved, rather than defeated."

The court there held that the power of alienation of the real property described was not suspended by the terms of the instrument.

In this action, the question of invalidity was first raised in the motion for amended findings, after the trust had been in operation for ten years. Whenever a majority of the trustees are clearly of the opinion that the sale of stock in the Atwood-Larson Company is for the best interests of the trust and the beneficiaries demand such sale or disposition, a sale of the stock is expressly authorized. In our opinion, there is here no suspension of the power of alienation.

Order affirmed.

---

[1]Reported in 28 N. W. (2d) 175.