# IN RE TRUST CREATED BY HERBERT J. ATWOOD.
## WILLIAM E. ATWOOD AND OTHERS
## v. RACHEL H. ATWOOD.

114 N. W. (2d) 284.

March 23, 1962—No. 38,021.

*Rachel H. Atwood,* pro se, for appellant.
*Reavill, Jenswold, Neimeyer & Johnson,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the trial court determining that objector, Rachel H. Atwood, appellant herein, no longer has any interest in an inter vivos trust created by Herbert J. Atwood. While there are some technical deficiencies in the manner in which the appeal has been perfected, objector, who is not a lawyer, appears in her own behalf, and we have concluded that we should overlook the failure to comply with our rules and dispose of the case on its merits.

On December 14, 1935, Herbert J. Atwood created an inter vivos trust. The nature of the trust and details concerning it are fully described in our opinion in Atwood v. Holmes, 224 Minn. 157, 28 N. W. (2d) 188. The provisions of the trust with which we are concerned here are those which make provision for the surviving spouse of one of the donor's children. These provisions read:

"If any of said four children of the donor shall die prior to the time for any distribution to him or her of principal or accumulations of the trust, and leave a spouse surviving, then and in such event one-third of any such distribution to which such deceased child would then be entitled if he were living and forty-five years of age and competent to receive his or her share as above provided, shall be immediately paid over and distributed to such spouse, and the balance of any such distribution (or if there be no surviving spouse, then the whole thereof) shall be held and distributed as follows:"

The trust agreement further provides:

"If at the time for any distribution hereunder there shall be surviving none of said children of the donor, nor any issue of any of them, distribution of all the trust property (after any surviving spouse of any of said children shall have first received one-third of the share of such child) shall be made to such persons as would then be the heirs at law of the donor had he then died intestate and a resident of Minnesota, in the same proportions to which they would be entitled under the laws of said state."

William E. Atwood is now the only living child of the donor, Herbert J. Atwood. He was married to Rachel H. Atwood at Duluth, Minnesota,

on July 16, 1937.[1] After living together for several years, they separated. Rachel thereafter brought an action in the courts of this state for separate maintenance and support. In that action, William filed an answer and counterclaim asking for an absolute divorce on the ground of cruel and inhuman treatment. Prior to trial, Rachel was permitted to withdraw her complaint, whereupon the cause was tried on the issues framed by William's cross bill and the reply thereto. The court denied a divorce on the ground that both parties had been guilty of cruel and inhuman treatment. It awarded custody of the two minor children of the parties to Rachel and ordered William to pay her $500 per month as permanent *alimony* and support money for the children and other medical expenses. On appeal, we considered the question whether the trial court could provide for custody and maintenance of the children where a divorce was denied. We affirmed the trial court. Atwood v. Atwood, 229 Minn. 333, 39 N. W. (2d) 103. It is clear from our opinion that while the trial court used the word "alimony," we considered the award to the wife as only an incident of support to the children. We said (229 Minn. 339, 39 N. W. [2d] 107):

"* * * In a memorandum made part of the order denying plaintiff's motion for a new trial, the trial court said that *the provisions for the support of plaintiff were made primarily as a necessary incident to the support order for the children,* and not by reason of any merit on plaintiff's part. In other words, independent of the needs of the children, no separate maintenance was provided for the wife, and the allowance to her of alimony is simply a device to give the children essential supervisory care. It makes little difference whether a financial provision primarily for the benefit of minor children is in part called alimony or called—what it here is in fact—a special allowance for the maintenance of a person charged with responsibility for their supervision."

In the later case of Atwood v. Atwood, 253 Minn. 185, 91 N. W.

---

[1] In view of the fact that there have been several cases in which respondent William E. Atwood and appellant, Rachel H. Atwood, appear in different roles, they will frequently be referred to herein by their given names in order to avoid confusion.

(2d) 728, we held that the courts of this state retained jurisdiction of the parties for the purpose of amending the decree providing for support of the children. While our opinion in that case talked in terms of alimony, what we really were deciding was that the court retained jurisdiction over the parties for the purpose of providing support and maintenance for the minor children and for the mother, in whose custody they had been placed, as an incident to their support, as we had stated clearly in our former opinion.

William moved to Tucson, in Pima County, Arizona, in 1951. He has lived there ever since. On November 13, 1957, he obtained a judgment and decree of divorce from Rachel in the Superior Court of Pima County, State of Arizona. The divorce was obtained on the ground that the parties had been separated for more than 5 years, which is one of the legal grounds for divorce in the State of Arizona.[2] Rachel was not a resident of Arizona at the time of the commencement of this action. Service of the summons and complaint was made upon her by publication and by registered mail. Rachel made no appearance in the divorce action, either personally or by attorney, and the case was tried as a default case. Under Arizona law, Ariz. Rev. Stat. 1956, § 25-311, a plaintiff in a divorce proceeding must have been a bona fide resident of the state for 1 year and of the county in which the court hearing the divorce proceeding is sitting for 6 months before the commencement of the action. The existence of these jurisdictional facts is established by the authenticated copies of the divorce decree admitted in these proceedings.

It is now the contention of objector that Arizona lacked jurisdiction to grant a valid divorce because the courts of this state had retained jurisdiction over the marital status of the parties in the original action for divorce brought here. She also contends that, even though the Arizona divorce be held valid, it could not affect her rights under the trust created by Herbert J. Atwood.

As to the first proposition advanced by objector, it is enough to say that we did not retain jurisdiction over the marital status of the parties in the original divorce proceeding brought here. The district court of

---

[2]Ariz. Rev. Stat. 1956, § 25-312.

Minnesota having judicially denied a divorce to either party, the action was at an end in so far as it involved the right to a divorce. What we did hold in both cases coming here subsequent to the denial of the divorce was that the courts of this state, having acquired jurisdiction of the parties, retained that jurisdiction for the purpose of enforcing the obligation of a father to support his minor children. A final determination of the right of either party to a divorce having been made, there no longer existed any impediment to the obtaining of a divorce elsewhere once the legal requirements of another state were met and a bona fide domicile established by plaintiff in that state.

■ No attempt has been made here to attack the establishment of a bona fide domicile by William in Arizona prior to the commencement of his divorce proceeding there. Nor can we see how that fact could be challenged. He has made his home in Arizona since 1951. There is no indication that he intended to establish a domicile there only for the purpose of obtaining a divorce. Since he established the domicile in Arizona and met the jurisdictional prerequisites of that state for the commencement of a proceeding for divorce, consistent with due process, we are required to give full faith and credit to the decree entered in Arizona. Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, 143 A. L. R. 1273; Annotation, 28 A. L. R. (2d) 1303.

The second Williams case, Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. ed. 1577, 157 A. L. R. 1366, held that the state of original domicile of the parties could question the establishment of a bona fide domicile in the state where the divorce was granted, but that case does not hold that, where a bona fide domicile is conceded or found to exist on sufficient proof, the state of defendant's domicile need not give full faith and credit to the decree granted by a court of the state of plaintiff's domicile.

Even before the first Williams case we followed the rule that a decree of a foreign state in which plaintiff in a divorce proceeding had a bona fide domicile would be given effect here on the principle of comity. Sheridan v. Sheridan, 213 Minn. 24, 4 N. W. (2d) 785. We there said that under Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. ed. 867, the courts of this state need not give full faith and

credit to such foreign decree but could decide for itself what effect should be given to such decree. The Haddock case, however, was expressly overruled by Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, 143 A. L. R. 1273. What we said in the Sheridan case regarding full faith and credit is consequently no longer applicable.

■ It follows that as to objector's first contention it is clear that the Arizona divorce decree terminated the marital status of William and Rachel. The question then remains: Could Rachel thereafter have an interest in this trust as the surviving spouse of William?

It is clear that at best Rachel had only an expectancy of becoming a beneficiary. Before she could receive anything under the provisions of the trust it was essential that William predecease her, prior to the termination of the trust, and while she still was his spouse. She could not alienate nor anticipate any possible future benefits under the trust. It follows that she had no vested right but only an expectancy which might ripen into fruition if the contingencies upon which it rested came to pass.

The legal, as well as the ordinary, meaning of "spouse" is one's husband or wife.[3] In Rosell v. State Industrial Accident Comm. 164 Ore. 173, 179, 95 P. (2d) 726, 729, the Oregon court said:

"* * * The legal, as well as the ordinary, meaning of 'spouse' is 'one's wife or husband'; and a 'surviving spouse', therefore, must be one, of a married pair, who outlives the other."

■ A divorced husband or wife is a former spouse and cannot be a surviving spouse. 17 Wd. & Phr. (Perm. ed.) p. 574; Barfield v. Barfield, 139 Ala. 290, 35 So. 884.

■ Inasmuch as Rachel's expected right to become a beneficiary in the trust property is derived from the trust instrument itself and depends upon her surviving her *husband*, which has now become an impossibility by virtue of the severance of the marital ties out of which the husband-wife relationship emanates, it now follows that she can

---

[3]Webster's Third New International Dictionary (1961) p. 2208; 39A Wd. & Phr. (Perm. ed.) p. 537; Harris v. Lumbermen's Mutual Cas. Co. (La. App.) 48 So. (2d) 728.

never become a beneficiary of the trust. The rights of Rachel are not unlike those of the former wife in Larsen v. Erickson, 222 Minn. 363, 24 N. W. (2d) 711, 168 A. L. R. 788, where we held that a Nevada divorce severed the marital relationship between the parties and therefore eliminated the wife's dower rights in her husband's property. In that case, both parties remarried after the divorce. With respect to the former wife's right to retain her dower rights in her former husband's property, we said (222 Minn. 368, 24 N. W. [2d] 714):

"* * * Obviously, she cannot successfully lay claim to interests in the property of both of them, since in no event can she be the surviving spouse of two husbands."

Here, William has remarried. Obviously, both Rachel and William's present wife cannot be his surviving spouse if he should die before the termination of this trust. It must follow that, inasmuch as Rachel can never become the surviving spouse of William, she can never share in this trust property. The trial court correctly held that she no longer has an interest in the trust property.

The termination of objector's right to share in the trust property in no way affects the rights of the children of William and Rachel.

Affirmed.

Mr. Justice Rogosheske, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.